## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

JOSHUA ALDEROTY,
ANNA AGUIRRE,
MICHAEL BONDS,
THEODORE ERDE-WOLLHEIM,
DOUGLAS HARRIS,
BRANDON KAZNICA, and
PHILLIP SWOPE,
*individually and on behalf of all similarly
situated individuals*,

      Plaintiffs,

v.

MAXIM HEALTHCARE SERVICES, INC.,
*a Maryland Corporation*,

      Defendant.

Civil Action No. TDC-14-2549

### MEMORANDUM OPINION

Joshua Alderoty, Anna Aguirre,[1] Michael Bonds, Theodore Erde-Wollheim, Douglas Harris, Brandon Kaznica, and Phillipe Swope (collectively, "Plaintiffs"), acting as individuals and on behalf of all similarly situated individuals, have sued their former employer, Maxim Healthcare Services, Inc. ("Maxim"), alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219 (2012), and various wage and hour laws in California, Kansas, Maryland, Missouri, Nevada, and New York. With respect to the FLSA claim, Plaintiffs have filed a Pre-Discovery Motion for Conditional Class Certification and Court-Supervised Notice to Potential Opt-In Plaintiffs Pursuant to 29 U.S.C. § 216(b) ("Motion for Conditional Class

---

[1] Although the Complaint spells this plaintiff's last name "Aguuire," and her signed Declaration spells it "Agguire," Maxim reports that the spelling in its human resources records is "Aguirre." In this Memorandum Opinion, the Court will use the human resources spelling.

Certification"). Also pending before the Court are Maxim's Motion to Strike in Part Plaintiff's Declarations in Support of Their Motion for Conditional Certification ("Motion to Strike Declarations"), Motion to Strike—or, in the Alternative, Stay or Transfer—Collective and Class Action Claims ("Motion to Strike Claims"), and Motion to Strike Plaintiffs' Proposed Notice ("Motion to Strike Notice"). For the reasons set forth below, Plaintiffs' Motion for Conditional Class Certification is GRANTED IN PART and DENIED IN PART; Maxim's Motion to Strike Declarations is DENIED; Maxim's Motion to Strike Claims is DENIED; and Maxim's Motion to Strike Notice is GRANTED IN PART and DENIED IN PART. The Court also authorizes Plaintiffs to issue the attached Notice to prospective class members.

## BACKGROUND

Maxim is a Maryland-based healthcare staffing company that operates throughout the United States. Maxim recruits nurses and other healthcare professionals to be placed in hospitals, medical offices, nursing homes, and patients' homes. To do so, Maxim employs Recruiters, including Senior Recruiters, whose duties include recruiting potential candidates through the use of websites and telephone calls, screening potential candidates for minimum qualifications and fitness for employment under Maxim standards, assisting in scheduling work, inputting hours for payroll, and answering the office phone.

Senior Recruiters have some responsibilities in addition to those of Recruiters. For example, they participate in orientation for new employees, contact insurance companies and schools for insurance authorization, and participate in sales calls and site visits. Senior Recruiters do not supervise other Recruiters and do not have the authority to hire and fire employees. Senior Recruiters report to Account Managers, who have authority to hire and fire personnel, impose discipline, evaluate job performance, and negotiate terms of placement and

2

fees relating to Maxim personnel.  Senior Recruiters routinely work more than 40 hours per week and are compensated through a base salary and commission without overtime pay.  Maxim classifies all salaried Senior Recruiters as exempt from the overtime pay requirement of the FLSA, 29 U.S.C. §§ 207, 213.

Although there have been some changes in organizational structure, Maxim is generally divided into two lines of business:  "Homecare" and "Staffing."  Senior Recruiters typically work in either a Homecare or Staffing office, but they sometimes work in "Hybrid" offices, which focus primarily on Homecare services but also provide a limited amount of Staffing services.  Senior Homecare Recruiters generally match nurses and other healthcare professionals to work in a patient's home.  Senior Staffing Recruiters generally match healthcare and administrative professionals to work in hospitals, nursing homes, and other facilities. According to Maxim, the duties of Senior Recruiters differ based on the line of business, the type of recruited positions, the size of the office, and the geographic area.  For example, Homecare Recruiters generally need to identify healthcare workers who do not require any training because they must work at a home without supervision, and they must have Maxim clinical staff evaluate and ultimately approve the hiring decisions.  Staffing Recruiters, on the other hand, place healthcare workers into institutions like nursing homes and generally make selection decisions for those institutional clients.  Although both Homecare Recruiters and Staffing Recruiters receive a base salary, their compensation differs in that they receive additional pay, either bonuses or commissions, through different formulas based on office performance and other factors.

On August 11, 2014, Plaintiffs filed this action, alleging that Maxim had misclassified them as exempt from the overtime requirements of the FLSA, and that it had unlawfully failed to

pay them overtime wages.  Plaintiffs brought the case as a collective action, on behalf of all Maxim Senior Recruiters, pursuant to 29 U.S.C. § 216(b).  On February 9, 2015, Plaintiffs filed their Motion for Conditional Class Certification, seeking (1) conditional certification of a collective FLSA class to which to send statutory notice, (2) implementation of a procedure by which court-approved notice of Plaintiffs' FLSA claim is sent to "all current and former salaried Senior Recruiters who worked for Maxim Healthcare Services, Inc. at any time since August 11, 2011," and (3) an order that Maxim identify all potential opt-in plaintiffs by providing a list of all current and former salaried Senior Recruiters who worked for Maxim for the past three years. On March 30, 2015, Maxim filed its Motion to Strike Declarations, Motion to Strike Claims, and Motion to Strike Notice.

## DISCUSSION

### I.    Maxim's Motion to Strike Declarations

Because it raises a preliminary issue regarding the evidence to be considered in resolving the Motion for Conditional Certification, the Court will first address Maxim's Motion to Strike Declarations.  Maxim has moved to strike certain portions of 10 declarations filed by individual plaintiffs because (1) they are "boilerplate" in that they contain the same statements by each plaintiff; and (2) they run afoul of the Federal Rules of Evidence in that they are not based on personal knowledge, are speculative, and lack foundation.

The Motion fails for several reasons.  First, motions to strike are governed by Federal Rule of Civil Procedure 12(f), which states that "the court may strike from a *pleading* an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f) (emphasis added).  Here, the challenged declarations were attached to Plaintiffs'

Motion for Conditional Class Certification, not their complaint, and therefore are not subject to a Rule 12(f) motion.

Second, the boilerplate nature of the declarations does not necessarily disqualify them from consideration. *See Guzelgurgenli v. Prime Time Specials, Inc.*, 883 F. Supp. 2d 340, 352 (E.D.N.Y. 2012); *Hargrove v. Ryla Teleservices, Inc.*, No. 2:11cv344, 2012 WL 489216, at *8 (E.D. Va. Jan. 3, 2012). While district courts have considerable discretion to grant motions to strike, unless they target redundant, impertinent, immaterial, or scandalous matter, they are generally disfavored. *See Waste Management Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001). Although the inclusion of redundant information may provide a basis to strike a declaration, these declarations are highly pertinent to determining whether to conditionally certify the proposed class; indeed, the fact that they may be redundant is material to the question whether the proposed class consists of similarly situated employees. *See Essame v. SSC Laurel Operating Company LLC*, 847 F. Supp. 2d 821, 825 (D. Md. 2012) (finding similarity in the plaintiffs' declarations to be probative in assessing the "similarly situated" question).

Finally, the Court rejects Maxim's claim that the declarations should be stricken because they contain material not based on personal knowledge, lacking in foundation, or containing legal conclusions. Upon review of the challenged material, the Court concludes that the facts contained in the declarations by former Maxim employees do not go beyond the universe of information that employees in their positions could be expected to have acquired during their tenures at Maxim. Maxim's insistence on explicit evidentiary foundations for each piece of information and its hyper-technical parsing of the language in the declarations would impose an unreasonable standard for lay witness declarations and would likely require striking portions of its own witnesses' declarations. For example, Maxim seeks to strike Alderoty's assertion that

"Maxim often required me to be on call 24 hours per day," because it purportedly constitutes a legal conclusion. *See* Alderoty Decl. Ex. F ¶ 4, ECF No. 31-8. Yet Maxim submitted a declaration in which a Senior Recruiter made the comparable assertion that "[w]hen I joined Maxim, I understood that 'on-call' duties were part of the job." *See* Manson Decl. ¶ 10, ECF No. 41-6. For these reasons, the Motion to Strike Declarations is denied.

## II. Plaintiffs' Motion for Conditional Class Certification

### A. Legal Framework

The FLSA generally requires that employees who work more than forty hours in a week receive overtime pay at the rate of one and one-half times their regular pay rate. *See* 29 U.S.C. § 207(a)(1). This requirement, however, does not apply to "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). The Secretary of Labor, whom the FLSA authorizes to promulgate regulations on this exemption, 29 U.S.C. § 213(e), has defined an administrative employee as someone (1) "who is compensated on a salary or fee basis at a rate of not less than $455 per week"; (2) "whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers"; and (3) "whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200 (2015); *see also Darveau v. Detecon, Inc.*, 515 F.3d 334, 338 (4th Cir. 2008).

If an employer violates these rules, employees may sue their employers as individuals or, if they choose, in a collective action on behalf of themselves and "similarly situated" employees. 29 U.S.C. § 216(b); *see also Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 758 (4th Cir. 2011). If employees choose to pursue a collective action, they may seek court-approved notice to inform similarly situated employees that they may join the litigation. *See Hoffman-La*

*Roche v. Sperling*, 493 U.S. 164, 169 (1989) (discussing the parallel collective action provision under the Age Discrimination in Employment Act).

The collective action provision serves several purposes. First, collective actions allow plaintiffs "the advantage of lower individual costs to vindicate rights by the pooling of resources." *See id.* at 170. Second, collective actions allow the courts efficiently to resolve common issues in one proceeding. *See id.* Third, FLSA collective actions promote enforcement of the law by empowering employees to "join in their litigation so that no one of them need stand alone in doing something likely to incur the displeasure of an employer." *See Pentland v. Dravo Corp.*, 152 F.2d 851, 853 (3d Cir. 1945).

Although the United States Court of Appeals for the Fourth Circuit has not provided guidance on how to address a motion for conditional class certification, decisions from other Courts of Appeals have identified, and judges of the United States District Court for the District of Maryland generally apply, a two-step process to test the sufficiency of the purported class: (1) a pre-discovery determination that the purported class is similarly situated enough to disseminate notice (the "notice stage") and (2) a post-discovery determination, typically in response to a motion for decertification, that the purported class is indeed similarly situated. *See, e.g., Thiessen v. General Electric Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001); *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218–19 (11th Cir. 2001); *Mooney v. Aramco*, 54 F.3d 1207, 1213–14 (5th Cir. 1995); *Randolph v. Powercomm Constr., Inc.*, 7 F. Supp. 3d 561, 575 (D. Md. 2014); *Syrja v. Westat, Inc.*, 756 F. Supp. 2d 682, 686 (D. Md. 2010). At the notice stage, courts applying this process make a threshold determination whether the class is similarly situated based on "substantial allegations" in the pleadings and any submitted affidavits or declarations. *See Thiessen*, 267 F.3d at 1102. Then, once discovery is largely complete, such

courts perform a more stringent inquiry on whether the class is indeed similarly situated. *Mooney*, 54 F.3d at 1214.

Because the record is sparse at the notice stage, courts often apply "a fairly lenient standard." *Id.*; *Hipp*, 252 F.3d at 1218 (noting that courts use a "fairly lenient standard" that "typically results in 'conditional certification'" at the notice stage); *Randolph*, 7 F. Supp. 3d at 575–76. Thus, courts require no more than "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Thiessen*, 267 F.3d at 1102 (citations omitted); *Randolph*, 7 F. Supp. 3d at 575–76. In other words, although vague allegations with meager factual support are generally insufficient to certify a class, proponents of conditional class certification need not conclusively demonstrate that a class of similarly situated plaintiffs exists. *See Randolph*, 7 F. Supp. 3d at 576; *Syrja*, 756 F. Supp. 2d at 686 (requiring "relatively modest" evidence that the putative class members are similarly situated). Determinations on whether plaintiffs have met this standard are generally left to the sound discretion of the district court. *Hipp*, 252 F.3d at 1219; *Syrja*, 756 F. Supp. 2d at 686.

This Court will apply the two-step process because an early, modest inquiry into the propriety of conditional class certification before issuing court-approved notice is consistent with the purposes of the FLSA collective action provision. Certainly, some threshold inquiry before issuing notice to potential class members is appropriate to ensure that notice is not subject to misuse and is "timely, accurate, and informative." *See Hoffman-La Roche*, 493 U.S. at 171–72. But it is equally important that the inquiry occur early and under a lenient standard to be consistent with the FLSA's purposes of promoting efficient joint adjudication of claims, lowering the costs of litigation to employee plaintiffs, and accounting for employees' natural reluctance to challenge to an employer. *See id.* at 170; *Pentland*, 152 F.2d at 853.

Moreover, the two-step process is appropriate because unlike in a class action under Federal Rule of Civil Procedure 23, the statute of limitations on an FLSA claim is not tolled on an individual employee's claim until that employee opts into the class. *Compare American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 550–51 (1974) (holding that the filing of a class action within the statute of limitations commences the case for subsequent plaintiffs), *with Kinney Shoe Corp. v. Vorhes*, 564 F.2d 859, 862 (9th Cir. 1977) (holding that the filing of a collective action within the statute of limitations does not commence the case for subsequent plaintiffs). Thus, early notice to similarly situated individuals, even before a final determination on class certification, is necessary to allow them to timely assert their claims.

Finally, because all employees who join an FLSA collective action, unlike a Rule 23 class action, must affirmatively opt into the litigation as plaintiffs, *see Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.2d 754, 758 (4th Cir. 2011), it would be unfair to impose a significantly more stringent initial barrier than for ordinary plaintiffs seeking to join a litigation under Federal Rule of Civil Procedure 20.[2]  For these reasons, the Court adopts the two-step process and the lenient standard at the notice stage.

### B. Evidence Relating to Senior Staffing Recruiters

In challenging the Plaintiffs' showing that the proposed class is similarly situated, Maxim focuses primarily on the differences between the roles of recruiters from the two primary lines of business: Homecare and Staffing. According to Maxim, these lines of business are different in

---

[2]  The fact that 29 U.S.C. § 216(b) does not describe any judicial role in certifying an FLSA collective action has been cited in support of the argument that any conditional certification process, including the two-step process, conflicts with the language of the statute, and that joining an FLSA collective action should be governed by Rule 20 (permissive joinder) and Rule 21 (misjoinder). *See* Scott A. Moss & Nantiya Ruan, *The Second-Class Class Action: How Courts Thwart Wage Rights by Misapplying Class Action Rules*, 61 Am. U. L. Rev. 523, 533–34, 570, 582 (2012).

that they serve different segments of the healthcare industry, with Homecare recruiting healthcare staff to work out of individual patients' homes and with Staffing placing healthcare workers in medical and other institutional facilities. This distinction is not a new one. In prior FLSA collective actions by Maxim recruiters filed in federal courts, Plaintiffs have typically sought or obtained conditional certification only as to Homecare Recruiters or Staffing Recruiters. *See, e.g., Wilson v. Maxim Healthcare Services, Inc.*, No. C14-789RSL, 2014 WL 7340480 (W.D. Wash. Dec. 22, 2014) (conditionally certifying a class of Staffing Recruiters); *Stelmachers v. Maxim Healthcare Services, Inc.*, No. 1:13-CV-1062-RLV (N.D. Ga. Aug. 5, 2013) (conditionally certifying a class of Homecare Recruiters), ECF No. 45; *Betancourt v. Maxim Healthcare Services, Inc.*, No. 10 C 4763, 2011 WL 1548964 (N.D. Ill. Apr. 21, 2011) (conditionally certifying a class of Staffing Recruiters).

In *Stelmachers*, the court declined to certify conditionally a class of "[a]ll current and former salaried Recruiters (including Healthcare Recruiters, Homecare Recruiters, Staffing Recruiters, and Senior Recruiters) who were employed by Maxim Healthcare Services, Inc." and instead certified a class of only Homecare Recruiters. *Stelmachers*, No. 1:13-CV-1062-RLV slip op. at 2. The court reasoned that because the evidence submitted was limited to the experiences of Homecare Recruiters from a specific subdivision, and none of the plaintiffs had attested to "any knowledge regarding the job duties of the recruiters in other subdivisions in Homecare Division" or "any knowledge regarding recruiters in other divisions," it would be inappropriate to conditionally certify all Recruiters. *Id.* slip op. 6–7. As a threshold matter, Maxim challenges the scope of the evidence based on the fact that, as in *Stelmachers*, none of the submitted declarations came from Senior Staffing Recruiters.

Plaintiffs' submission of evidence consists of 11 declarations from named plaintiffs or opt-in plaintiffs, 21 declarations from other former Maxim recruiters submitted in other FLSA collective action cases, and a position description for Healthcare Recruiters.  Notably omitted from these declarations are any by Senior Staffing Recruiters or any substantial allegations that Senior Staffing Recruiters are similarly situated.  Plaintiffs' 11 declarations from Senior Recruiters do not specify whether they worked in the Homecare or Staffing lines of business. But Maxim's Vice President of Strategic Sales and Operations stated that, having reviewed Maxim's internal human resources records, all 11 declarants worked in Homecare offices. Without any evidence to rebut the Vice President's assertion, the Court finds that these 11 declarants worked in Homecare offices and that these declarants' personal accounts relate to the work of Senior Homecare Recruiters, not Senior Staffing Recruiters.

Each of the declarations contains the same general statements that "while working at Maxim, I got to know other Senior Recruiters and became familiar with their job responsibilities," that "[t]hese individuals performed the same or similar job duties and worked numerous hours in excess of 40 hours a week without overtime compensation," and that "[f]rom my experience, I know that all Senior Recruiters were subjected to the same practice and procedures."  *See, e.g.*, Alderoty Decl. ¶ 6.  However, because the declarants all worked in Homecare offices, and do not state that they have had experience or interactions with Senior Staffing Recruiters, the Court does not consider these broad statements to provide substantial allegations relating to whether Senior Staffing Recruiters are similarly situated with others.

Beyond these 11 declarations, Plaintiffs submitted photocopies of declarations from four other FLSA collective action cases against Maxim:  seven declarations of "healthcare recruiters" from *Ene v. Maxim Healthcare Services, Inc.*, No. 09-cv-02453 (S.D. Tex. Nov. 2, 2012), four

declarations of "healthcare recruiters" from *Stelmachers*, No. 1:13-CV-1062-RLV, five declarations of Staffing Recruiters from *Betancourt*, 2011 WL 1548964, and five declarations of Staffing Recruiters from *Wilson*, 2014 WL 7340480.[3] These declarations, however, do not address whether Senior Staffing Recruiters are similarly situated. None of them are from Senior Staffing Recruiters, nor do they claim to know anything about Senior Staffing Recruiters' job duties. In fact, none of them are from Senior Recruiters or aver any knowledge of Senior Recruiters generally. They all specifically state that their position as Recruiters was "entry level." *See, e.g.*, Wilson Decl. Ex. U, ECF No. 31-22. Even the boilerplate sentence asserting familiarity with other Maxim employees only claims familiarity with "other Staffing Recruiters" or "other Recruiters." Likewise, the position description submitted by Plaintiffs is for the job of "Healthcare Recruiter / Entry Level Sales Management – Staffing," not for the position of a Senior Recruiter, whether for Homecare or Staffing.

The only evidence before the Court that relates to conditional certification of Senior Staffing Recruiters consists of two declarations submitted by Maxim, one by a Senior Staffing Recruiter and one by a Senior Hybrid Recruiter. In the first place, it is unclear whether a defendant's submitted declaration constitutes a plaintiff's "substantial allegation" for conditional certification. *See Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546–47 (6th Cir. 2006) (holding that "the *plaintiff* must show . . . that his position is similar . . . to the positions held by the putative class members") (emphasis added) (citations omitted); *Syrja*, 756 F. Supp. 2d at 686 (holding that the question is "whether the plaintiffs have demonstrated that potential class members are 'similarly situated'") (quoting *Camper v. Home Quality Mgmt., Inc.*, 200 F.R.D.

---

[3] These declarations, some of which are photocopied in a manner that renders them barely legible, retain the case captions from their original cases, are dated and signed as of the time they were submitted in those cases, and provide no indication that the declarants were even aware that their declarations would be used in this case.

516, 519 (D. Md. 2000)).  At any rate, the two declarations tend to show only that Senior

Staffing Recruiters are not similarly situated to Senior Homecare Recruiters.  In particular,

Andrew Komoroski, who worked in a Hybrid office, claimed that "recruiting for in-patient

Homecare positions was totally different from recruiting for institutional staffing positions." *See*

Komoroski Decl. ¶ 4, ECF No. 41-5.  As an example, Komoroski stated that while Clinical

professionals made final hiring decisions for Homecare clients, Recruiters made final hiring

decisions for Staffing clients. *See id.*  This distinction directly relates to their discretionary

authority, a key consideration in the FLSA administrative exemption that Plaintiffs seek. *See* 29

C.F.R. § 541.200 (2015) (defining the administrative exemption as someone whose "primary

duty includes the exercise of discretion").

     Thus, Plaintiffs have not put before the Court any evidence on the work of Senior

Staffing Recruiters, much less evidence to show that they are similarly situated with other Senior

Recruiters.  Given Plaintiffs' explanation that this case arose because Senior Homecare

Recruiters were not sent notice of the *Stelmachers* litigation even after the court conditionally

certified a class of Homecare Recruiters generally, it is not surprising that Plaintiffs were all

Senior Homecare Recruiters, and that their submitted declarations relate to such work.  Notably,

Senior Staffing Recruiters are already included in a conditionally certified collective action on

behalf of Staffing Recruiters in *Wilson*, 2014 WL 7340480, at *8.  But the connection of this

case to *Stelmachers*, where the court limited the class to Homecare Recruiters in the absence of

evidence from Staffing Recruiters, makes it inexplicable that Plaintiffs would seek a broad class

of all Senior Recruiters without submitting any declarations from any Senior Staffing Recruiters.

     The Court does not decide whether Senior Homecare Recruiters and Senior Staffing

Recruiters are similarly situated for purposes of an FLSA collective action.  They may, in fact,

be similarly situated. But where Plaintiffs have not submitted any evidence regarding the work of Senior Staffing Recruiters, and did not even submit the position description for either a Senior Recruiter or a Senior Staff Recruiter, the Court concludes that it lacks sufficient evidence, even under the lenient standard, to evaluate this question at all. *See Stelmachers*, No. 1:13-CV-1062-RLV (conditionally certifying only Homecare Recruiters because "neither the plaintiff nor opt-in plaintiffs aver any knowledge regarding the job duties of the recruiters in the other subdivisions in Homecare Division, nor aver any knowledge regarding recruiters in the other divisions"). Therefore, the Court will not certify a broad class of all Senior Recruiters, including Senior Staffing Recruiters, and will instead evaluate only whether it can conditionally certify a class of Senior Homecare Recruiters.

### C. Similarly Situated

Plaintiffs have asserted, and Maxim does not dispute, that all Senior Homecare Recruiters are subject to a common policy or plan of classifying them as administrative personnel who are exempt from the overtime pay requirement of the FLSA. So the key question is whether the prospective class members are sufficiently "similarly situated" with respect to this common policy to warrant issuance to them of a notice of this litigation.

The FLSA states that employees may sue their employer for failure to pay overtime "for and in behalf of . . . themselves and other employees similarly situated." 29 U.S.C. § 216(b). While the Fourth Circuit has not provided guidance on the meaning of "similarly situated," other courts have acknowledged the broad discretion district courts have to discern its meaning. *See Thiessen*, 267 F.3d at 1105 (finding it preferable for district courts to determine whether plaintiffs are "similarly situated" on an ad hoc basis); *Mooney*, 54 F.3d at 1216 (finding it "unnecessary" to decide how district courts determine whether plaintiffs are "similarly

situated"); *Randolph*, 7 F. Supp. 3d at 575 (finding that whether plaintiffs are similarly situated is "left to the sound discretion of the district court") (citations omitted).  Determining whether members of the purported class are similarly situated is fact-specific, and the factors courts consider vary from case to case.  *Compare Randolph*, 7 F. Supp. 3d at 576–77 (considering whether employees were subject to a single set of employer standards and whether the employer universally did not pay overtime), *and Syrja*, 756 F. Supp. 2d at 687–88 (considering whether employees set their own schedule, whether case assignments vary between employees, and whether the employer universally did not pay overtime, among other factors), *with Betancourt*, 2011 WL 1548964 at *9–10 (considering similarities in Maxim Staffing Recruiters' job titles and position descriptions, ability to negotiate pay rates, and ability to discipline outside employees), *and Wilson*, 2014 WL 7340480 at *8 (considering similarities in Maxim Staffing Recruiters' core duties "principally in terms of vetting candidates for hiring").

Under the lenient standard of the notice stage, the Court finds that Plaintiffs have made substantial allegations in their Complaint, Motion for Conditional Certification, and attached declarations that Senior Homecare Recruiters are similarly situated.  First, Plaintiffs have shown that Senior Homecare Recruiters share similar job duties.  *See Betancourt*, 2011 WL 1548964, at *9 (finding similar job duties relevant in conditionally certifying Maxim Staffing Recruiters); *Wilson*, 2014 WL 7340480, at *8 (same); *Stelmachers*, No. 1:13-CV-1062-RLV, slip op. 6 (finding similar job duties relevant in conditionally certifying a class of Maxim Homecare Recruiters).  Plaintiffs' 11 declarants all stated that, as Senior Homecare Recruiters, their job duties included (1) recruiting potential candidates from various internet sites and cold calls; (2) assisting in the placement process for nurses by screening potential candidates regarding their minimum qualifications and fitness for employment in accordance with Maxim's standards, (3)

15

answering the phone, (4) inputting payroll hours for billing purposes, (5) assisting in scheduling the work, (6) contacting insurance companies and schools for insurance authorization, (7) participating in sales calls and site visits with Accounts Managers, and (8) participating in orientation of new employees to present Maxim's policies. *See, e.g.*, Alderoty Decl. ¶ 2. The declarants also stated that, while they facilitated the hiring process, they "did not have the discretion, judgment, or ability to make decisions concerning hiring, firing, job performance, discipline, or specific job duties." *Id.* ¶ 3. Nor did they have the authority to negotiate the terms of placement or the fees involved with placement. Rather, they were to report to their Account Manager for such decisions.

Beyond job duties, Senior Homecare Recruiters also bear strong similarities in terms of their work schedule and pay. Plaintiffs' declarations state that they generally worked between 8:00 a.m. and 6:00 p.m., often without a lunch break. They also state that they were all paid a salary and a small commission, but did not receive overtime compensation. They were often required to be "on-call" outside of normal business hours. *Id.* ¶ 2.

Maxim disputes the similarity of Senior Homecare Recruiter job duties and work arrangements, arguing that duties vary based on the type of placement, customer needs, and level of supervision. To support this assertion, Maxim has submitted declarations to identify differences among Senior Recruiters, particularly differences between duties in the Homecare and Staffing business lines. However, Maxim's own declarations reveal that there are strong similarities among Senior Homecare Recruiter job duties. *Compare id.* ¶ 2 ("Maxim often required me to be on call 24 hours per day"), *with* Manson Decl. ¶ 10, ECF No. 41-6 (stating that Senior Recruiters' job duties included being "on-call" when he was the only Recruiter in the office); *compare also* Alderoty Decl. ¶ 2 (stating that Senior Recruiters' job duties included

"inputting payroll for billing purposes"), *with* Komoroski Decl. ¶ 18 (stating that Senior Recruiters' job duties included "doing office payroll").  Moreover, Maxim's description of their pay arrangements largely corroborates Plaintiffs' declarations concerning pay.  *See* Goldberg Decl. ¶ 39, ECF No. 41-3 (stating that "pay now includes a base salary, plus quarterly and annual incentive bonuses calculated on both an office and individual basis").

Maxim's declarations point out several differences among Senior Homecare Recruiters working in different offices and subdivisions, such as the type of patients with whom they seek to place healthcare workers, the level of skill of the workers to be placed, and how they conduct interviews.  To the extent that there are individualized differences based on the size of the office, geography, or other factors, these differences are nevertheless consistent with Plaintiffs' general statement of their duties.  At the notice stage, courts recognize that there will always be individualized differences among the purported class.  *See Comer*, 454 F.3d at 547 (stating that at the notice stage, plaintiffs must show only that their positions are "similar, not identical, to the positions held by the putative class members"); *Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 570 (D. Md. 2012) (noting that "[i]ndividual circumstances are inevitably present in a collective action"); *Randolph*, 7 F. Supp. 3d at 576–77 (quoting *Butler*); *Frank v. Gold'n Plump Poultry, Inc.*, No. 04-CV-1018 (PJS/RLE), 2007 WL 2780504, at *4 (D. Minn. Sept. 24, 2007) ("If one zooms in close enough on anything, differences will abound . . . But plaintiffs' claims need to be considered at a higher level of abstraction.").  While the cited differences may reveal that Senior Homecare Recruiters and their individual offices are not clones of one another, they

do not refute Plaintiffs' substantial allegations that Senior Homecare Recruiters are similarly situated.[4]

Finally, Maxim argues that the Court should not conditionally certify a class of Senior Homecare Recruiters, no matter their office or subdivision, because Plaintiffs' misclassification claims would require an individualized inquiry that belies a class-wide decision. Citing the factors for whether an employee meets the FLSA administrative exemption and United States Department of Labor opinion letters, Maxim argues that to decide whether Senior Homecare Recruiters meet that exemption, the Court would have to perform a case-by-case analysis of whether each employee had sufficient discretion and independent judgment. However, as previous courts have observed, these are the sort of merit-based questions courts are not to engage in at the notice stage. *See Hipp*, 252 F.3d at 1218 (observing that courts usually make a "factual determination" on the similarly situated question after a motion for decertification); *Essame*, 847 F. Supp. 2d at 826 (finding the employer's argument that the employees' factual circumstances were dissimilar was flawed because "it delves too deeply into the merits of the dispute" and that "such a steep plunge is inappropriate for such an early stage of a FLSA collective action"). Under the lenient standard of the notice stage, the Court's role is to determine only whether the purported class is similarly situated enough to receive notice of the litigation. Once discovery is complete, should Maxim move for decertification the Court will be

---

[4] Although not dispositive, it is significant to note that these differences did not prevent Maxim from classifying all Senior Homecare Recruiters as exempt under the FLSA in a categorical manner, without any individualized determination of whether they met the definition of an administrative employee. *See Delgado v. Ortho-McNeil, Inc.*, No. SACV07-263CJCMLGX, 2007 WL 2847238, at *2 (C.D. Cal. Aug. 7, 2007) (observing that it "is somewhat disingenuous . . . for Defendants to argue that they should be permitted to treat all sales representatives as one group for purposes of classifying them as exempt, but that this Court can only determine the validity of that classification by looking to the specific job duties of each individual sales representative").

better positioned to make a factual determination on whether individualized differences are significant enough to thwart the collective action. *See Betancourt*, 2011 WL 1548964, at *4 (observing that the "burden of preliminary certification is light because the risk of error is insignificant: should further discovery reveal that the named positions, or corresponding claims, are not substantially similar the defendants will challenge the certification"). Thus, at the notice stage, the Court finds that Plaintiffs have made substantial allegations that Senior Homecare Recruiters are similarly situated.

### D. Geographic Scope

Maxim also argues that even if some Senior Homecare Recruiters can be deemed "similarly situated," the conditional certification should not extend to a nationwide class because the submitted declarations did not include representatives from most or all of the states. Courts have certified a nationwide class with declarations from just a few states. *See, e.g.*, *Wilson*, 2014 WL 7340480, at *4, *8 (conditionally certifying a nationwide class of Senior Staffing Recruiters with four declarations concerning three offices in two states); *Sanchez v. Sephora USA, Inc.*, No. 11-03396 SBA, 2012 WL 2945753, at *3–5 (N.D. Cal. July 18, 2012) (conditionally certifying a nationwide class with four declarations); *Gilbert v. Citigroup, Inc.*, No. 08-0385 SC, 2009 WL 424320, *4–5 (N.D. Cal. Feb. 18, 2009) (conditionally certifying a nationwide class with five declarations).

Here, Plaintiffs have submitted declarations from Senior Homecare Recruiters in California, Kansas, Maryland, Missouri, Nevada, New York, and Oregon. Moreover, there is every indication that Senior Homecare Recruiters were subject to a nationwide policy that employees in their position were classified as exempt from the FLSA overtime requirement, not a policy that was particular to the office in which they worked. Although Maxim argues that

there are geographical variations that result in differences in the type of clients and the number of employees in each particular office, these individualized differences do not contradict the shared experiences of Senior Homecare Recruiters in 11 different states, and do not provide a basis, at the notice stage, to limit the distribution of the class notice.  The Court therefore finds that the submitted declarations provide a sufficient basis to conditionally certify a nationwide class.

## III.    Maxim's Motion to Strike Claims

In a separate motion, Maxim requests that the Court strike, stay, or transfer two groups of Plaintiffs' claims:  (1) the claims of Senior Staffing Recruiters, because that class of potential plaintiffs is included among the class of plaintiffs covered by an earlier filed collective action in the United States District Court for the Western District of Washington, and (2) claims alleging violations of Kansas, Nevada, and New York state laws, because Maxim has submitted a declaration stating that none of the named plaintiffs who worked in those states ever held the position of Senior Recruiter.

### A.    Senior Staffing Recruiters

Maxim first seeks to strike, or in the alternative stay or transfer, Senior Staffing Recruiter claims to the Western District of Washington, where the court has already conditionally certified a class of all Staffing Recruiters, including Senior Staffing Recruiters.  *See Wilson*, 2014 WL 7340480, at *8.  Indeed, the *Wilson* plaintiffs have already sent court-approved notice to all Senior Staffing Recruiters, and to date 29 Staffing Recruiters have opted into that class.  *See, e.g.*, Acuna Consent to Join, *Wilson*, No. 14-0789, 2014 WL 7340480, ECF No. 60-1.  Because, as discussed above, this Court will conditionally certify only a class of Senior Homecare Recruiters, not Senior Staffing Recruiters, Maxim's Motion as to this issue is denied as moot.

### B.     Kansas, Nevada, and New York Claims

Maxim also moves to strike Plaintiffs' class action claims alleging violations of Kansas, Nevada, and New York state laws on the grounds that there are no class representatives from those states. *See* Kan. Stat. Ann. § 44-313, *et seq.*; Nev. Rev. Stat. Ann. § 608.005, *et seq.*; 12 NYCRR pt. 142, *et seq.* Under Federal Rule of Civil Procedure 23, class representatives must be part of the same class, possess the same interest, and suffer the same injury as the class members. *See Schlesinger v. Reservists Committee to Stop the War,* 418 U.S. 208, 216 (1974); *Gunnells v. Healthplan Services, Inc.*, 348 F.3d 417, 425 (4th Cir. 2003).

According to Maxim, Anna Aguirre, Brandon Kaznica, and Phillip Swope, the three named plaintiffs from Nevada, New York, and Kansas respectively, were not Senior Recruiters, and therefore cannot serve as class representatives for those state law claims. *See* Budash Decl. ¶ 3, ECF No. 44-7 (declaration of the Human Resources Information System Team Lead, who has "personal knowledge of Maxim's employment data and records"). Plaintiffs disagree and reference the declarations of Aguirre, Kaznicka, and Swope, in which they state that they were, in fact, Senior Recruiters. *See* Aguirre Decl. ¶ 2; Kaznica Decl. Ex. K ¶ 2, ECF No. 31-13; Swope Decl. Ex. O ¶ 2, ECF No. 31-16. This is precisely the kind of factual dispute that the Court will be in a better position to resolve once discovery is complete. *See Goodman v. Schlesinger*, 584 F.2d 1325, 1332 (4th Cir. 1978) (holding that district court improperly dismissed class allegations prematurely when discovery had not occurred and the factual record was incomplete). Therefore, the Court denies Maxim's Motion to Strike as to the Kansas, Nevada, and New York state law claims.

## IV.     Maxim's Motion to Strike Plaintiff's Proposed Notice

Finally, Maxim has moved to strike Plaintiffs' proposed notice to potential class members and has instead proposed a different notice.  Plaintiffs have agreed to adopt some of Maxim's proposed language in its amended notice, but there remain several differences between the parties' versions.  District courts "have the discretionary authority to oversee the notice-giving process," including determining the contents of a notice to a conditional class.  *Hoffmann-LaRoche*, 493 U.S. at 172–73 ("By monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative."); *Butler*, 876 F. Supp. 2d at 574 (finding that district courts have "broad discretion regarding the 'details' of the notice sent to potential opt-in plaintiffs").

The parties disagree on the following issues:  (1) the class of individuals to whom the notice will be sent (the "Notice Recipients"); (2) the contents of the notice; (3) the type of contact information for Notice Recipients to be provided to Plaintiffs; and (4) the deadlines associated with the notice.

### A.     Recipients of the Notice

Maxim first requests that the Court exclude from the list of Notice Recipients any Senior Recruiters who received a notice in the separate class action against Maxim in the Western District of Washington.  *See Wilson*, 2014 WL 7340480.  As stated above, the Court conditionally certifies a class of only Senior Homecare Recruiters, which would not include Senior Staffing Recruiters.  Because the class in *Wilson* is limited to Staffing Recruiters and Senior Staffing Recruiters, the list of Notice Recipients here necessarily will not include any personnel who received notice in *Wilson*. *See id.* at *8.  Therefore, this issue is moot.

22

Maxim also seeks to exclude any Senior Recruiters who participated in an earlier settlement of multiple FLSA collective action cases. *See* Judgment and Order of Final Approval Granting Plaintiffs' Motion for Final Approval of Settlement and Certification of the Settlement Class, *Ene v. Maxim Healthcare Services, Inc.*, No. 4:09-CV-02453 (S.D. Tex. Nov. 2, 2012), ECF No. 180 ("*Ene* Settlement"). Generally, court-approved settlements have the same *res judicata* effect as litigated judgments. *See Hoxworth v. Blinder*, 74 F.3d 205, 208 (10th Cir. 1996); *In re Medomak Canning*, 922 F.2d 895, 900 (1st Cir. 1996).

Plaintiffs do not dispute that individuals subject to the *Ene* Settlement do not have a claim for back wages relating to work pre-dating the November 2, 2012 *Ene* Settlement Order, but note that they may have claims relating to post-settlement violations. Therefore, notice may not be sent to any current or former Senior Homecare Recruiters who participated in the *Ene* Settlement and did not work for Maxim after November 2, 2012. To the extent that Senior Homecare Recruiters who participated in the *Ene* Settlement worked for Maxim after that date, they should be included on the list of Notice Recipients, and they may be sent the Notice. Their claims, however, will be limited to those arising from work occurring after November 2, 2012.

Finally, Maxim seeks to limit notice to Senior Recruiters who were employed in the 11 offices where the named plaintiffs worked. As discussed above, the Court has determined that Plaintiffs have made substantial allegations that Senior Homecare Recruiters nationwide are similarly situated for purposes of this collective action. *See supra* Section II.D. Therefore, the Notice may be sent to all Senior Homecare Recruiters, regardless of the location of their current or former office.

**B.      Content of the Notice**

The parties also disagree on the content of the Notice.  Maxim opposes inclusion of the case caption on the Notice, opposes language that gives the recipients the impression that they are necessarily entitled to overtime pay, proposes particular language on the Court's position and Maxim's position relating to Plaintiffs' claims, opposes Plaintiffs' statement relating to the right to be free from retaliation, and proposes language describing the fee arrangement with plaintiffs' counsel and noting that plaintiffs could be liable to Maxim for costs if Maxim prevails.  Maxim also opposes the reference to the beginning of the collective action time period as three years ago, when the statute of limitations for non-willful violations of the FLSA is two years.

Upon reviewing both parties' proposed notices, the Court will authorize the use of the Notice attached to the accompanying Order.  This Notice includes the case caption, which has been included in other similar notices. *See, e.g.*, Notice of Right to Opt-In to Lawsuit, *Wilson*, No. 14-0789, 2014 WL 7340480, ECF No. 59.  It adopts Plaintiffs' proposed language regarding the possibility of entitlement to overtime pay and the right to be free from retaliation, as well as Maxim's proposed language on the positions of Maxim and the Court on this litigation, as the most fair, accurate, and non-prejudicial ways offered to convey the subject matter at issue.  It does not include the requested language regarding fee arrangements and potential liability to Maxim as unnecessary and potentially unfair in that it may inappropriately deter recipients from opting in to the case.

The Notice also includes the three-year time period for the collective action.  Because the Court has yet to make a determination on whether there was a willful violation of the FLSA, which would extend the statute of limitations from two to three years, *see* 29 U.S.C. § 255(a) (2012), there is no basis to exclude the third year at this time.  It would be more efficient to issue

a broader notice now and limit claims later, than to have to issue a supplemental notice upon any later finding of willfulness.

### C.    Contact Information for Notice Recipients

Although Maxim agrees to provide the names and mailing addresses of Notice Recipients, it objects, for privacy reasons, to providing Plaintiffs with their e-mail addresses and telephone numbers. In order to facilitate the timely transmission of the Notice, the Court will require Maxim to produce the Notice Recipients' names, mailing addresses, and e-mail addresses. *See, e.g.*, *Wilson*, 2014 WL 7340480, at *9 (ordering Maxim to produce class members' e-mail addresses). Maxim need not, however, provide Senior Homecare Recruiters' telephone numbers. Courts often require movants to show a "special need" in order to grant requests for telephone numbers. *See Calderon v. Geico General Ins. Co.*, No. RWT 10cv1958, 2011 WL 98197, at *9 (D. Md. Jan. 12, 2011); *Arevalo v. D.J.'s Underground, Inc.*, No. DKC 09-3199, 2010 WL 4026112, at *2 (D. Md. Oct. 13, 2010). Speculation that some potential opt-in plaintiffs may not receive the initial mailing or e-mail is insufficient to demonstrate such a special need. *See Arevalo*, 2010 WL 4026112, at *2. Moreover, telephone notification runs the risk that certain Notice Recipients will receive information about the case that differs in some way from the contents of the Notice. Thus, Maxim need not provide telephone numbers of the Notice Recipients absent a showing of special need.

### D.    Deadlines

Maxim has asked for 30 days to compile and produce the contact information for the Notice Recipients, as compared to the 14 days requested by Plaintiffs. Because the statute of limitations continues to run on the claims of potential opt-in plaintiffs, the Court will require Maxim to produce the contact information within 21 days of the Order on this Motion. Maxim

requests that the opt-in period be limited to 45 days, as opposed to the 90 days requested by Plaintiffs. Plaintiffs have stated that 45 days would be acceptable if e-mails were provided. Because the e-mail Notice should reach Senior Homecare Recruiters faster than first-class mail, the deadline to opt-in will be 45 days after the issuance of the Notice.

For the above reasons, the Motion to Strike Notice is granted in part and denied in part, and the Court authorizes the use of the Notice attached to the accompanying Order.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Conditional Class Certification is GRANTED IN PART and DENIED IN PART. The Court conditionally certifies a class of all current and former Senior Homecare Recruiters who were employed by Maxim Healthcare Services, Inc. at any time between September 23, 2012 and the present. Maxim's Motion to Strike Declarations is DENIED. Maxim's Motion to Strike Collective and Class Action Claims is DENIED. Maxim's Motion to Strike Plaintiffs' Proposed Notice is GRANTED IN PART and DENIED IN PART. Maxim is required to produce to Plaintiffs within 21 days of the date of this Order the names, mailing addresses, and e-mail addresses for all current and former Senior Homecare Recruiters who were employed by Maxim at any time between September 23, 2012 and the present. Within seven days of receipt of such information, Plaintiffs shall issue the Notice attached to the accompanying Order, which requires potential class members to opt-in as plaintiffs within 45 days of the issuance of the Notice. A separate order follows.

Date: September 23, 2015

THEODORE D. CHUANG
United States District Judge