IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| **JOSHUA ALDEROTY, et al.,** individually and on behalf of all similarly situated individuals, | |
| Plaintiffs, | Case No. 8:14-cv-02549-TDC |
| v. | |
| **MAXIM HEALTHCARE SERVICES, INC.,** a Maryland corporation, | |
| Defendant. | |

## CONSENT MOTION FOR APPROVAL OF SETTLEMENT AGREEMENTS AND DISMISSAL WITH PREJUDICE

Plaintiff Joshua Alderoty, along with nine (9) other individuals ("Plaintiffs")[1], by and through the undersigned counsel, and with consent of Defendant Maxim Healthcare Services, Inc. ("Maxim" or "Defendant"), hereby respectfully jointly request that the Court approve their negotiated Confidential Settlement Agreements and Releases ("Agreements") and dismiss their actions with prejudice, with all parties to bear their own costs.  In support of this Joint Motion, the Parties state as follows:

1.      Plaintiffs' Complaint asserts claims for alleged unpaid overtime wages in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*  Defendant has disputed Plaintiffs' claims and contends that Plaintiffs were fully compensated for all work performed.

2.      The Parties agree and represent that they have reached a settlement that requires Plaintiffs to dismiss, with prejudice, their individual claims in exchange for a monetary payment,

---

[1] The Plaintiffs covered by this Motion are listed in ***Exhibit A***.

payment of their attorneys' fees and costs, and a release of Maxim from any further liability under the Fair Labor Standards Act and all applicable state wage and hour laws for the time period in question.

3.      The Parties' Agreements resolve all of the claims that Plaintiffs brought or could have brought in the lawsuit, including claims under the Fair Labor Standards Act.  The Agreements also provide for Plaintiffs' attorneys' fees and costs.   Because the Agreements involve the settlement and release of claims under the Fair Labor Standards Act, the Parties must submit the proposed Agreements to the Court to examine and ensure that the Agreements represent a fair and reasonable resolution of a *bona fide* dispute.  After review, the Court can then enter an order dismissing the lawsuit with prejudice and permitting Plaintiffs' release of their claims under the Fair Labor Standards Act and all applicable state wage and hour laws.  *See Torres v. Washrite Plus. Inc.*, 2016 U.S. Dist. LEXIS 100046, at **4, 15 (D. Md. Aug. 1, 2016) (citing *Lynn's Food Stores*, 679 F.2d 1355, 1335 (11th Cir. 1982)).

4.      Due to the confidentiality of the Agreements, the Parties have agreed not to make them public record.  Accordingly, the Parties also request permission to submit copies of the signed Agreements directly to the Court for *in camera* review before the May 24, 2017 Settlement Approval Hearing.

5.      The Parties' respective counsel are experienced in litigating wage and hour lawsuits and engaged extensively in arm's length, good-faith settlement negotiations that considered the merits of Plaintiffs' claims, Maxim's defenses, and all the available and likely evidence.

6.      Plaintiffs' claims were initiated as a collective action and the litigation has been ongoing for over two years.  Moreover, based on Maxim's defenses, Plaintiffs recognize that they might not have recovered anything or risked recovering much less than the amount that was

claimed.  Similarly, Maxim acknowledges the risk that some or all of its defenses may have not been established and that Plaintiffs could have received favorable judgments, including liquidated damages.  Accordingly, in light of the length of time of the litigation, the factual and legal complexities of the cases, the inherent risks of trial, and the expense of continued litigation, the Parties agree that the terms reflected in the Agreements are mutually satisfactory and represent a fair and reasonable resolution of a bona fide dispute over, *inter alia*, any alleged unpaid wages due to Plaintiffs.  The settlements also promote the public's interest in encouraging settlement.

7.     Additionally, given the complexity of the factual and legal issues and the months expended to reach a fair settlement, the award of attorneys' fees allocated in the cases to Plaintiffs' counsel is reasonable.

8.     As the Parties have negotiated a mutually agreeable settlement, they jointly move the Court to: (1) approve the proposed Agreements; (2) dismiss this case with prejudice; and (3) retain jurisdiction to enforce the terms of the Agreements. [2]

WHEREFORE, for all the foregoing reasons the Parties respectfully request permission to submit a copy of the signed Agreements directly to the Court for *in camera* review, and that this Court approve the Agreements and dismiss this case with prejudice, with all Parties to bear their own costs.

Dated:  May 15, 2017                         Respectfully submitted,

                                             */s/  Jesse L. Young*
                                             Jason J. Thompson (MD Bar No. 13428)
                                             Jesse L. Young (Admitted Pro Hac Vice)
                                             SOMMERS SCHWARTZ, P.C.
                                             One Towne Square, Suite 1700

---

[2] In addition, 12 of the 22 individuals asserting claims in this case (or asserting claims related to this case, but pending before the AAA) will be voluntarily dismissed due to lack of damages and/or expired statutes of limitations.

Southfield, MI 48076
Telephone: (248) 355-0300
Facsimile: (248) 864-7840
Email: jthompson@sommerspc.com
        jyoung@somerspc.com

Timothy J. Becker (Admitted Pro Hac Vice)
JOHNSON BECKER, PLLC
33 South Sixth Street, Suite 4530
Minneapolis, MN 55402
Tel: 612.436.1800
Fax: 612.436.1801
Email: tbecker@johnsonbecker.com

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| **JOSHUA ALDEROTY, *et al.*,** individually and on behalf of all similarly situated individuals,<br><br>                    Plaintiffs,<br><br>v.<br><br>**MAXIM HEALTHCARE SERVICES, INC.,** a Maryland corporation,<br><br>                    Defendant. | Case No. 8:14-cv-02549-TDC |

## MEMORANDUM IN SUPPORT OF CONSENT MOTION FOR APPROVAL OF SETTLEMENT AGREEMENTS AND DISMISSAL WITH PREJUDICE

### I.        INTRODUCTION

Plaintiffs, by and through their undersigned counsel, and with consent of Defendant, request that this Court approve the individual settlements reached by the Parties concerning Plaintiffs' lawsuit under the Fair Labor Standards Act (hereinafter, "FLSA") 29 U.S.C. §§ 201, *et seq*. This case is one of four related cases filed in federal district courts across the country.[3] Moreover, there are approximately 125 related individual cases pending in arbitrations across the country through the American Arbitration Association ("AAA"). The Parties seek Court approval of 10 individual settlements in this particular case because claims under the FLSA, such as those released by the Plaintiffs, may not be waived or released without U.S. Department of Labor or

---

[3] *See Wilson v. Maxim Healthcare Servs., Inc.*, Case No. 14-cv-789 (W.D. Wash.); *Crother v. Maxim Healthcare Servs., Inc.*, Case No. 15-cv-2912 (N.D. Cal.); *Weigand v. Maxim Healthcare Servs., Inc.*, 15-cv-4215 (W.D. Mo.).

Court approval. *See* 29 U.S.C. 216(c); *see also Taylor v. Progress Energy, Inc.,* 415 F 3d 364, 374 (4th Cir. 2005) *vacated on other grounds* 493 F. 3d 454 (4th Cir. 2007).

## II.    **BACKGROUND**

### A.    **The Pleadings**

On August 11, 2014, Plaintiff Joshua Alderoty filed this case against Defendant, Maxim Healthcare Services, Inc., alleging that Maxim violated the federal Fair Labor Standards Act ("FLSA") by misclassifying him and other Senior Recruiters as exempt and failing to pay them overtime wages for work performed in excess of forty (40) hours per week.  On October 15, 2014, Plaintiff filed a First Amended Complaint to include additional Plaintiffs and Rule 23 class action claims for several states.  (Doc. 20).  Maxim filed its Answer on January 26, 2015, denying Plaintiffs' allegations and asserting 38 affirmative defenses.  (Doc. 26).  On February 3, 2015, the Court entered its initial scheduling order. (Doc. 28).

### B.    **Conditional Certification and Other Pre-Discovery Events**

On February 9, 2015, Plaintiffs filed their motion for FLSA conditional certification, which was fully briefed by the Parties.  (Docs. 31, 41, 47).  Maxim also filed related, collateral motions, including a motion to strike Plaintiffs' declarations (Doc. 42), a motion to strike Plaintiffs' proposed notice to the FLSA collective (Doc. 43), and a motion to strike, stay, or transfer, Plaintiffs' collective and class action claims (Doc. 44).  Each of those motions were fully briefed by the parties. (*See* Docs. 49 to 56).  The extensive motion practice caused the Parties to file a joint motion to stay the Court's scheduling order, which the Court granted on June 23, 2015. (Docs. 57-58).

On September 23, 2015, the Court issued an opinion and order granting in part and denying in part Plaintiffs' motion for conditional certification, granting in part and denying in part Maxim's motion to strike Plaintiffs' proposed notice, and denying Maxim's other related, collateral motions.

(Docs. 60-61).  On October 21, 2015, the Court-authorized notice was sent to 83 putative collective members.  At the close of the opt-in period, a total of 33 employees had affirmatively joined the case by filing their consent forms.  (*See* Docs. 2, 13-17, 62, 64-66, 68-69, 71-76, and 78-81).

On October 30, 2015, the Parties submitted their respective proposed scheduling orders for the Court's consideration.  (Doc. 67).  On December 7, 2015, the Court held a telephonic status conference to discuss and then order a modified case schedule.  (Doc. 82) (paperless order).

On December 22, 2015, pursuant to the Parties' prior stipulation regarding arbitration,[4] 18 of the 33 Plaintiffs withdrew their consent forms.  (Doc. 84).  Out of the 18 individuals dismissed to individual arbitration, only eight (8) retained Plaintiffs' counsel to pursue their individual cases in arbitration.  Thus, 15 plaintiffs were set to proceed in this litigation while another eight (8) claimants were set to proceed in their individual arbitrations.

## C.   Discovery

Once the Parties knew who would be litigating (and in what forum), they turned their attention to discovery.  In early February 2016, Plaintiffs served written discovery on Maxim, including requests to admit, interrogatories, and requests for production of documents.  Maxim responded to Plaintiffs' discovery requests and produced nearly 3,000 pages of documents.

In late February 2016, Maxim served its written discovery requests on each of the Plaintiffs, which included 15 interrogatories and 24 requests for production of documents.  All but one of the Plaintiffs[5] responded to Maxim's discovery requests – with the assistance of counsel – and produced

---

[4] On March 20, 2015, the Parties stipulated to the dismissal of several Plaintiffs to individual arbitration and to a similar procedure for any other individuals who sought to join the case after signing an individual arbitration agreement.  (Doc. 39).

[5] On March 8, 2016, an opt-in plaintiff requested to be dismissed from this action, leaving 14 plaintiffs in this litigation. (Doc. 91).

all of the responsive documents in their possession.  Shortly thereafter, Maxim served deposition notices on each of the Plaintiffs.

Between February and April 2016, due to the advanced case schedules in the individual recruiter arbitrations, the Parties began taking depositions in the various recruiter arbitration cases across the country, including in California, Florida, Missouri, Nevada, Oregon, and Washington. Maxim deposed the recruiter claimants and Plaintiffs' Counsel deposed the claimant's former supervisor(s).  In all, over a dozen depositions were taken of recruiters and their supervisors during that two-month period.

On April 12 and 13, 2016, Plaintiffs' Counsel took a Rule 30(b)(6) deposition of Maxim's corporate witness regarding 14 designated matters.  The deposition included 20 exhibits and lasted approximately 11 hours over the course of two days.

**D.    Settlement Discussions**

Shortly after the Rule 30(b)(6) deposition, the parties began global settlement discussions concerning Maxim's recruiters, which included this case as well as the pending *Wilson*, *Crother*, and *Weigand* recruiter cases and the approximately 125 individual recruiter arbitrations pending in AAA throughout the country.   On July 7, 2016, the Parties moved this Court for a stay of all deadlines in the case, including briefing and discovery, so the Parties could continue their settlement discussions. (Doc. 96).   The settlement negotiations lasted for several months, and the Parties eventually agreed to the material terms of a global settlement in or about September 2016, which included the following: (1) Maxim will pay each eligible recruiter a fixed amount of damages for each workweek employed as a recruiter with Maxim during the relevant period; and (2) Maxim will pay a fixed amount to each settling recruiter for their attorneys' fees and costs.

On April 5, 2017, the Court entered a stipulated Order setting deadlines for the Parties to finalize the individual Agreements and to file the instant joint motion for settlement approval. (Doc. 110).   On April 19, 2017, the Court entered a stipulated Order decertifying Plaintiffs' FLSA collective action and withdrawing their Rule 23 class action claims. (Doc. 112).   The Parties have finalized their Agreements and now seek final approval from the Court and dismissal of this action with prejudice. [6]

### III.   LAW AND ARGUMENT

#### A.   The Legal Standard Supports Approval of the Settlement

Under the FLSA, Court-approved settlements are appropriate "provided that the settlement reflects a 'reasonable compromise of disputed issues' rather than 'a mere waiver of statutory rights brought about by an employer's overreaching.'" *See Saman v. LBDP, Inc.*, 2013 U.S. Dist. LEXIS 83414, *7 (D. Md. June 13, 2013) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)).

The Fourth Circuit has not directly addressed the factors to be considered when deciding motions for approval of FLSA settlements. *Saman*, 2013 U.S. Dist. LEXIS 83414 at *7 (citations omitted).   However, district courts in this circuit typically follow the Eleventh Circuit's analysis in *Lynn's Food Stores*.   *Id.*   The settlement must "reflect[] a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions." *Id.* (citations omitted).   In this respect, the Court considers: (1) whether there are FLSA issues actually in dispute; (2) the fairness and reasonableness of the settlement in light of the relevant factors from Rule 23 (if applicable); and

---

[6] In addition, 12 of the 22 individuals asserting claims in this case (or asserting claims related to this case, but pending before the AAA) will be voluntarily dismissed due to lack of damages and/or expired statutes of limitations.

(3) the reasonableness of the attorneys' fees, if included in the agreement. *Riveros v. WWK Construction, Inc.*, 2015 U.S. Dist. LEXIS 136592, *3-4 (D. Md. Oct. 5, 2015) (citations omitted).

### 1.   *A Bona Fide Dispute Exists*

"In deciding whether a *bona fide* dispute exists as to a defendant's liability under the FLSA, courts examine the pleadings in the case, along with the representations and recitals in the proposed settlement agreement." *Mena v. Season Teppanyaki Buffet, LLC*, 2017 U.S. Dist. LEXIS 41233, *4 (D. Md. Mar. 22, 2017) (citing *Lomascolo v. Parsons Brinckerhoff, Inc.*, 2009 U.S. Dist. LEXIS 89129 (E.D. Va. Sept. 28, 2009)).

In this case, Plaintiffs allege that Maxim misclassified them under the administrative exemption and failed to pay them overtime wages as required under the FLSA. (Doc. 20). In response, Maxim denies liability and asserted 38 affirmative defenses. (Doc. 26).  The record in this case shows that a *bona fide* dispute exists as to Maxim's liability under the FLSA.

### 2.   *The Settlement Agreements are Fair and Reasonable*

If a *bona fide* dispute exists, courts evaluate the fairness and reasonableness of the settlement using the following factors:

> (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of [] counsel . . . ; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery.

*Saman*, 2013 U.S. Dist. LEXIS 83414 at *8 (quoting *Lomascolo*, 2009 U.S. Dist. LEXIS 89129).

A review of the factors as applied to this case weighs in favor of finding the Agreements to be fair and reasonable.

i.      _The Extent of Discovery that has Taken Place_

As described above, the Parties engaged in extensive written discovery and over a dozen depositions of recruiters and their supervisors all across the country, including a lengthy Rule 30(b)(6) deposition of Maxim's corporate witness.  The information obtained through discovery was valuable in assisting the Parties to better evaluate their respective positions, and to better decide what a fair and reasonable settlement would be.  Thus, this factor weighs in favor of finding the settlement to be fair and reasonable.

ii.      _The Complexity, Expense and Duration of the Litigation_

It goes without saying that exemption misclassification cases involving challenges to corporate-wide human resources practices are complex.  Such cases often require, as in this case, the careful review of numerous statutes, regulations, and case law.  The Parties were required to analyze and litigate issues concerning liability, damages, class certification, discovery, and a host of other issues which are unique to wage and hour litigation.  There are few "bright line" tests.  As such, this type of litigation can be very challenging and difficult.

Moreover, there is no reason to doubt that further litigation would be both costly and time-consuming.  The Parties already expended considerable time and resources litigating this case over the past 2.5 years.  Many hours of attorney and paralegal time have been consumed during the pendency of the case.  The Parties conducted numerous conference calls and exchanged hundreds of e-mails and correspondence.  Thousands of documents have been exchanged and reviewed.  Further, as the docket entries in the case confirm, virtually every conceivable legal issue would need to be litigated.  Without a settlement, there is no doubt that the Parties would continue litigating this case for years with the same tenacity.  Thus, this factor weighs in favor of finding the settlement to be fair and reasonable.

###### iii.   *The Settlement was achieved in an adversarial context and there is no existence of fraud or collusion*

There is no fraud or collusion in this action.  The individual Agreements are the culmination of arm's length negotiations between the Parties, which has been hard-fought by competent counsel and determined Parties in multiple actions across the country.  Plaintiffs and Maxim agreed to the settlements, voluntarily and knowingly, and the Parties agree the settlements are fair and reasonable based on the facts of the case and negotiations between the parties.  *See Comstock v. Florida Metal Recycling, LLC*, 2009 WL 1586604, at *2 (S.D. Fla. June 5, 2009) (stating that "based upon counsel's representation that this outcome is fair in light of [the plaintiff's] probability of success on the merits and that the settlement was reached without coercion, collusion or undue influence, this Court is satisfied that the settlement agreement is a 'fair and reasonable' resolution of a bona fide dispute over Plaintiff's FLSA claims . . .") (internal citations omitted); *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 08-CV-1310, 2009 WL 3094955, at *11 (E.D. Va.) ("There is a presumption that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary").  Thus, this factor weighs in favor of finding the settlement to be fair and reasonable.

###### iv.   *Plaintiffs are represented by counsel experienced and well versed in FLSA actions and wage and hour law*

Plaintiffs' Counsel has extensive experience and qualifications in this area of law. Sommers Schwartz, P.C. and Johnson Becker, PLLC represented Plaintiffs at all stages of this litigation.  Both are experienced class action firms, including in wage and hour collective actions. (See ***Exhibit B***, Young Declaration).  Mr. Young has been involved in this litigation from its onset. Mr. Young is a partner at his firm and manages its wage and hour litigation department.  Further, attorney Jason Thompson spent significant time on this case.  With over 23 years' experience, Mr.

Thompson has been recognized for his excellence as a trial lawyer and has been appointed as class counsel in multi-district litigation cases involving overtime pay, antitrust, insurance coverage, environmental pollution, and consumer protection.  Attached to Mr. Young's declaration is a list of Plaintiffs' Counsel's accomplishments, honors, awards and published works.  This factor weighs in favor of finding the settlement to be fair and reasonable.

<em>v.</em>  <u><em>Opinions of Counsel</em></u>

The Parties' counsel exercised their experience based on an intimate knowledge of the facts of the case and legal issues facing the Parties, including conducting an independent analysis of the strength and weakness of the claims, the value of the claims, the costs and expense of protracted litigation, discovery, trial, and appeals.  As a result all counsel believe the settlements are fair and reasonable, which provides further support for the reasonableness of the settlements.  *See Saman,* 2013 U.S. Dist. LEXIS 83414 at *12 (D. Md. 2013).  Although "counsel's opinion and recommendation as to the fairness and reasonableness of a settlement is not to be blindly followed" (*Id*.), this representation provides further support for the fairness and reasonableness of the individual settlements in this case.

<em>vi.</em>  <u><em>Probability of Success on the Merits and Amount of Settlement in Relation to Potential Recovery</em></u>

Continuing the present action through trial, and any potential appeals, would be an expensive and lengthy process.  Absent settlement, Defendant would continue to vigorously defend the case, and resolution could take years.  Further litigation would likely require more discovery, briefing on dispositive motions, potentially re-filing individual actions in multiple different forums, and likely appellate practice. The remaining burden for the Parties would be substantial as continued litigation would require resolution of complex issues at considerable time and expense.

In this case, the Plaintiffs sought unpaid overtime wages, liquidated damages, statutory penalties, interest, attorneys' fees, and costs. As discussed throughout, the Parties reached a substantial settlement to resolve these claims. This settlement is fair and offered each individual Plaintiff the opportunity to recover a meaningful amount of compensation. The formulas used to compensate the Participating Claimants are reasonable, consistent with other wage and hour settlements approved by Courts in this district and others, and applied in a manner which does not discriminate against any of the Plaintiffs. In fact, the formulas used in this matter are largely based on the formulas used in prior Maxim recruiter cases, *Stelmachers v Maxim Healthcare Servs., Inc*., Case No. 1:13-cv-01062 (N.D. Ga.) and *Ene v Maxim Healthcare Servs., Inc*., Case No. 4:09-cv-02453 (S.D. Tex.), in which similar settlements were approved by those respective courts.

The reasonableness of the settlement is underscored by the fact that Maxim has various defenses to the calculation of damages which, if successful, would shorten the applicable statute of limitations, preclude the payment of overtime at one and one-half times the regular rate of pay, prevent the recovery of liquidated (or double) damages, and/or eliminate certain statutory penalties. Moreover, had the Parties not reached a settlement, Maxim fully intended to seek class decertification.

Plaintiffs determined that the settlements are in their best interest and represent a fair resolution of this dispute. Plaintiffs initially alleged they were entitled to up to approximately 5-10 hours in unpaid work per week. However, through discovery, it became clear that many Plaintiffs would likely not reach that number given their specific on-call job duties and the applicable law. Maxim asserted numerous defenses to this claim including the lack of record evidence supporting Plaintiffs' alleged uncompensated work.

Plaintiffs also face the risk of recovering little or nothing at trial should this case not settle. Even if Plaintiffs were to recover more at trial, any payment would be months or even years later following protracted litigation and possible appeals.  Because Plaintiffs have "received a fair deal regarding the sums that were in controversy" when considering the range of recovery, the settlement is fair and reasonable.  *Crabtree v. Volkert, Inc.*, No. CIV.A.11-0529-WS-B, 2013 WL 593500, at *3 (S.D. Ala. Feb. 14, 2013); s*ee also King v. Wells Fargo Home Mortg.,* 2009 WL 2370640, *2 (M.D. Fla. July 30, 2009) ("Because the Plaintiff agreed to the settlement figure which was entered into knowingly and voluntarily, after having the opportunity to fully discuss it with an attorney, the Court concludes that the proposed settlement is a fair and reasonable resolution of a bona fide dispute over the FLSA.").

## B.      Plaintiffs' Attorneys' Fees and Costs are Reasonable

Lastly, the Court must review Plaintiffs' attorneys' fees and costs for reasonableness. Section 216(b) of the FLSA provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."  29 U.S.C. § 216(b).  An award of attorneys' fees under § 216(b) of the FLSA is mandatory, but the amount of the award is within the discretion of the judge. *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994).

"In calculating an award of attorney's fees, the Court must determine the lodestar amount, defined as a 'reasonable hourly rate multiplied by hours reasonably expended.'" *Lopez v. XTEL Const. Grp., LLC*, 838 F. Supp. 2d 346, 348 (D. Md. 2012) (citing *Grissom v. The Mills Corp.*, 549 F.3d 313, 320-21 (4th Cir. 2008); *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990)). "[T]here is a 'strong presumption' that the lodestar figure is reasonable, but that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account

a factor that may properly be considered in determining a reasonable fee." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554, 130 S. Ct. 1662, 176 L. Ed. 2d 494 (2010). In determining whether the lodestar results in a reasonable fee, this Court evaluates "the twelve well-known factors articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) and adopted by the Fourth Circuit in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978)." *Thompson v. HUD*, 2002 U.S. Dist. LEXIS 23875, *28 (D. Md. Nov. 21, 2002) (footnotes omitted). Those factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to properly perform the legal service; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Thompson*, 2002 U.S. Dist. LEXIS 23875, at *28 n.19 (citing *Johnson*, 488 F.2d at 717-19). However, the Supreme Court has noted that the subjective *Johnson* factors provide very little guidance and, in any event, that "the lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable attorney's fee.'" *Perdue*, 559 U.S. at 551, 553 (quoting *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 566, 106 S. Ct. 3088, 92 L. Ed. 2d 439 (1986)).

An hourly rate is reasonable if it is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 890 n.11, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984); *see Thompson*, 2002 U.S. Dist. LEXIS 23875 at *27 n.18 (D. Md. Nov. 21, 2002) (same). In Appendix B to its Local Rules, this Court has established rates that are presumptively reasonable for lodestar calculations. *Poole ex rel. Elliott v. Textron, Inc.*, 192 F.R.D. 494, 509 (D. Md. 2000).

As to the time and labor required for this litigation, attached to this Motion as ***Exhibit B*** is the declaration of attorney Jesse L. Young, outlining the attorneys' fees and litigation expenses incurred in this particular action and the reasonableness of those fees and expenses. The declaration contains a certification that Mr. Young reviewed the time records supporting data for the declaration and that the hours claimed are well grounded in fact and justified.  Mr. Young's declaration confirms the total hours incurred in litigating this case to date.  The total hours up to the filing of this Motion are 277.3 attorney hours and 125.4 paralegal hours totaling fees in the lodestar amount of $102,430.00.  Additionally, it is estimated that Plaintiffs' total litigation expenses in this case will exceed $9,500.00.

After extensive arm's length negotiation, the Parties agreed on a fee amount for settlement that equals a significant reduction from the amount of fees actually incurred by Plaintiffs' Counsel in this action and effective attorneys' fee rate equals a blended rate of approximately $313 per hour ($86,755.00 / 277.3 hours) and the paralegals' fee rate equals a blended rate of approximately $125 per hour ($15,675.00 / 125.4 hours).  These rates are well within the hourly rates typically approved by this Court. *See e.g.*, *Allen v. Enabling Techs. Corp.*, 2017 U.S. Dist. LEXIS 56474, *3 (D. Md. Apr. 12, 2017) (finding hourly rates of $475 for attorneys and $135 for paralegals reasonable in FLSA action under the D. Md. Local Rules, App. B(3)). The effective rates of Plaintiffs' attorneys and paralegal(s) in this case are within the presumptively reasonable rates set forth in Appendix B of this Court's Local Rules.

Here, the settlement agreements call for the payment of attorneys' fees and costs directly to Plaintiffs' Counsel.  As stated above, the actual lodestar incurred by the Plaintiffs in this case are well in excess of the agreed amount.   However, in order to settle this matter, Plaintiffs' counsel reduced their fees and costs significantly and agreed to an amount equaling approximately sixty-

17

seven (67%) percent of the value of each Plaintiffs' settlement amount (which is paid *in addition* to and separately from their underlying settlement amounts). This represents a fair compromise of the fees and costs counsel could otherwise have sought through court order, and recognizes the value in resolving this litigation without any party incurring unnecessary further fees. The Agreements should be approved because: (1) the fees do not infringe on or diminish any of the individual Plaintiffs' recovery; and (2) the fees are reasonable under the lodestar approach.

For these reasons, the Plaintiffs respectively request that the Court approve their attorneys' fees and reimbursement of litigation expenses.

## IV.   CONCLUSION

For all the reasons presented above, this Court should approve the Parties' settlements, approve the requested attorneys' fees and costs, and dismiss the case with prejudice.

Dated:  May 15, 2017                                     Respectfully submitted,

*/s/  Jesse L. Young*
Jason J. Thompson (MD Bar No. 13428)
Jesse L. Young (Admitted Pro Hac Vice)
SOMMERS SCHWARTZ, P.C.
One Towne Square, Suite 1700
Southfield, MI 48076
Telephone: (248) 355-0300
Facsimile: (248) 864-7840
Email: jthompson@sommerspc.com
         jyoung@somerspc.com

Timothy J. Becker (Admitted Pro Hac Vice)
JOHNSON BECKER, PLLC
33 South Sixth Street, Suite 4530
Minneapolis, MN 55402
Tel: 612.436.1800
Fax: 612.436.1801
Email: tbecker@johnsonbecker.com

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on May 15, 2017, I electronically filed the forgoing paper with the Clerk of

the Court using the ECF system, which will send notification of such filing to all counsel of record.


/s/ Veronica L. Stewart
vstewart@sommerspc.com