IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| **JOSHUA ALDEROTY, et al.,** individually and on behalf of all similarly situated individuals,<br><br>    Plaintiffs,<br>v.<br><br>**MAXIM HEALTHCARE SERVICES, INC.**, a Maryland corporation,<br><br>    Defendant. | Case No. 8:14-cv-02549-TDC |

_____/

### DECLARATION OF JESSE L. YOUNG

I, Jesse L. Young, pursuant to 28 U.S.C. § 1746, declare as follows:

1.      I am a partner at Sommers Schwartz, P.C. and my practice involves wage and hour litigation under both federal law (the Fair Labor Standards Act) and state laws (Rule 23 class action).  My credentials and our firm's bio are attached hereto.

2.      I have been involved in this case from the beginning, oversaw much of the litigation efforts, and have personal knowledge of the events and facts described herein.  I am over the age of 21, and could, if called to testify, attest to the events and facts described below.

3.      This declaration is filed to support representations and facts submitted to the Court as to: the complexities of this litigation and the events leading up to the settlement; the difficulties and risks that this case entailed; the benefits of the settlement; that the settlement Agreements are fair and reasonable, and should be approved under the relevant FLSA analysis; the reasonableness of the work performed, and time spent, by Plaintiffs' counsel; and other related matters in support of the Consent Motion for Approval of Settlements.

1

**A.     The Instant Litigation**

4.      The instant lawsuit was originally filed in this Court on August 11, 2014. (Doc. 1). Prior to that date, Plaintiffs' counsel spent time speaking to clients to research the facts and circumstances underlying the case – which emanated from prior litigation – and investigating the possible legal claims.  As a result, a Complaint was prepared on behalf of named plaintiff and a class of approximately 80 senior recruiters nationwide.

5.      On October 15, 2014, Plaintiffs filed a First Amended Complaint to include additional Plaintiffs and Rule 23 class action claims for several states.  (Doc. 20).   Maxim filed its Answer on January 26, 2015, denying Plaintiffs' allegations and asserting 38 affirmative defenses. (Doc. 26).

6.      On February 9, 2015, Plaintiffs filed their motion for FLSA conditional certification, which was fully briefed by the Parties. (Docs. 31, 41, 47).

7.      Maxim also filed related, collateral motions, including a motion to strike Plaintiffs' declarations (Doc. 42), a motion to strike Plaintiffs' proposed notice to the FLSA collective (Doc. 43), and a motion to strike, stay, or transfer, Plaintiffs' collective and class action claims (Doc. 44). Each of those motions were fully briefed by the Parties. (*See* Docs. 49 to 56). The flurry of motions caused the Parties to file a joint motion to stay the Court's scheduling order, which the Court granted on June 23, 2015. (Docs. 57-58).  The briefing on these motions took considerable time and effort on the part of Plaintiffs' counsel.

8.      On March 20, 2015, given the state of the law at the time, the Parties stipulated to the dismissal of several Plaintiffs to individual arbitration and to a similar procedure for any other individuals who sought to join the case after signing an individual arbitration agreement. (Doc. 39).

9. On September 23, 2015, the Court issued an opinion and order granting in part and denying in part Plaintiffs' motion for conditional certification, granting in part and denying in part Maxim's motion to strike Plaintiffs' proposed notice, and denying Maxim's other related, collateral motions. (Docs. 60-61).

10. Thereafter, Plaintiffs' counsel engaged several third-party administrators for bids on the notice administration project and retained an administrator to handle the notice mailing process.

11. On October 21, 2015, the Court-authorized notice was sent to 83 putative collective members (the cost of which was advanced by Plaintiffs' counsel). At the close of the opt-in period, a total of 33 employees had affirmatively joined the case by filing their consent forms. (*See* Docs. 2, 13-17, 62, 64-66, 68-69, 71-76, and 78-81).

12. On December 22, 2015, pursuant to the Parties' prior stipulation regarding arbitration, 18 of the 33 Plaintiffs withdrew their consent forms. (Doc. 84). Out of the 18 individuals dismissed to individual arbitration, only eight (8) retained Plaintiffs' counsel to pursue their individual cases in arbitration. Thus, 15 plaintiffs were set to proceed in this litigation while another eight (8) claimants were set to proceed in their individual arbitrations.

13. Throughout this litigation, discovery, investigations, and research were conducted on behalf of the Plaintiffs, of which I was personally involved or oversaw. In particular:

- Thousands of pages of records were reviewed and analyzed both at the corporate level and for the individuals that opted-in to the litigation;

- In addition to records related to payroll, time, and attendance, Plaintiffs' counsel reviewed plaintiffs' personnel files, Maxim policies, training materials, employee handbooks, and other relevant documents;

- Numerous individual recruiter depositions were taken in the AAA arbitrations, which were used to evaluate the factual issues across all pending recruiter cases;

- A Rule 30(b)(6) deposition of Maxim's designee was taken to address the factual and legal issues in this case; and

- Extensive legal research and analysis was completed regarding the issues presented in the case.

14. Plaintiffs' view on the probability of any success on the merits was influenced by the fact that Maxim has legal and factual grounds available to defend this action. First, Maxim has litigated and prevailed in a similar case involving the classification of its recruiter position. *See Hudkins v. Maxim Healthcare Services, Inc.*, 39 F. Supp. 2d 1349 (M.D. Fla. July 2, 1998). At a minimum, that decision potentially provides Maxim with a good-faith basis for the exempt classification of its recruiters. Second, several investigations by the Department of Labor concluded that Maxim's recruiters were properly classified as exempt.

**B.   Settlement Efforts**

15. Shortly after the Rule 30(b)(6) deposition, the Parties began global settlement discussions concerning Maxim's recruiters, which included this case, as well as the pending *Wilson*, *Crother*, and *Weigand* recruiter cases and the approximately 125 individual recruiter arbitrations pending in AAA throughout the country.

16. On July 7, 2016, the Parties moved this Court for a stay of all deadlines in the case, including briefing and discovery, so the Parties could continue their settlement discussions. (Doc. 96).

17. The settlement negotiations lasted for several months and the Parties eventually agreed to the material terms of a global settlement in or about September 2016, which included the following: (1) Maxim will pay each eligible recruiter a fixed amount of damages for each workweek employed as a recruiter with Maxim during the relevant period; and (2) Maxim will pay a fixed amount to each settling recruiter for their attorneys' fees and costs.

18.     As part of the global settlement, 12 of the 22 individuals asserting claims in this case (or asserting claims related to this case, but pending before the AAA) will be voluntarily dismissed due to lack of damages and/or expired statutes of limitations.

**C.     Reasonableness of Settlement, Fee Requests, Expense Reimbursement**

19.     The record in this case, in addition to the lengthy litigation history involving Maxim's salaried recruiters,[1] shows that a *bona fide* – and often times heated – dispute exists as to Maxim's liability under the FLSA.

20.     The details of the settlements are set forth in Consent Motion for Approval of Settlements and in the proposed Agreements. The complexities that the Parties encountered in reaching these Agreements were significant. As one of Plaintiffs' attorneys, I can attest to the numerous complications that were considered in determining how to structure a global settlement among four pending federal court cases and 125 individual arbitrations. I can further attest to the level of effort, expertise, and dedication of both Plaintiffs' and Maxim's counsel in making sure that the current settlement was fair, reasonable and adequate to both sides. Had those efforts not occurred, and the hurdles and obstacles overcome, this case, and the global settlement, would never have been reached.

21.     The proposed releases by the Plaintiffs were scrutinized and negotiated by the attorneys involved in this litigation. They represent a fair compromise and constitute a fair negotiated bargain for release of claims that arise from the facts as alleged in the First Amended

---

[1] *See Wilson v. Maxim Healthcare Servs., Inc.*, Case No. 14-cv-789 (W.D. Wash.); *Crother v. Maxim Healthcare Servs., Inc.*, Case No. 15-cv-2912 (N.D. Cal.); *Weigand v. Maxim Healthcare Servs., Inc.*, 15-cv-4215 (W.D. Mo.); *Stelmachers v Maxim Healthcare Servs., Inc*., Case No. 1:13-cv-01062 (N.D. Ga.); *Betancourt v. Maxim Healthcare Servs., Inc*., Case No. 10-cv-4763 (N.D. Ill.); and *Ene v Maxim Healthcare Servs., Inc*., Case No. 4:09-cv-02453 (S.D. Tex.).

Complaint. The Plaintiffs all consented to the release, as well as the Agreements, and signed the settlement and release after having been afforded full access to counsel.

22. The proposed Agreements are based largely on the settlements that were approved in prior litigation in other courts. *Stelmachers v Maxim Healthcare Servs., Inc.*, Case No. 1:13-cv-01062 (N.D. Ga.) and *Ene v Maxim Healthcare Servs., Inc.*, Case No. 4:09-cv-02453 (S.D. Tex.).

23. In preparing this declaration, I reviewed the time records of Plaintiffs' counsel, confirming that the accuracy, utility, efficiencies and reasonableness of the amount of time spent by Plaintiffs' counsel working on this litigation, and expenses incurred. I have reviewed all of the time and expenses and can attest that they are reasonable as to both the hourly rate, time spent, work allocation and totals, as well as being absolutely necessary to reach the settlement in this case. Plaintiffs' counsel diligently worked to avoid duplication of efforts and expenses, while at the same time not sacrificing work quality on behalf of the individual Plaintiffs. The Agreements obtained in this litigation were directly affected by the efforts and expenses advanced by Plaintiff's counsel in this lawsuit.

24. Plaintiffs' counsel's lodestar in this case is summarized as follows:

| Attorney | Years in Practice | Hours | Hourly Rate (per Appendix B) | Lodestar |
|---|---|---|---|---|
| Jesse L. Young | 5 to 8 | 159.2 | $300 | $47,760 |
| Jason J. Thompson | 20+ | 46.8 | $475 | $22,230 |
| Lance C. Young | 20+ | 22.6 | $475 | $10,375 |
| Kevin J. Stoops | 9 to 14 | 3.3 | $350 | $1,155 |
| Neil B. Pioch | 9 to 14 | 7.9 | $300 | $2,370 |
| Amy L. Marino | Less than 5 | 27 | $150 | $4,050 |
| Tiffany R. Ellis | Less than 5 | 10.5 | $150 | $1,575 |

| Paralegals | | 125.4 | $125 | $15,675 |
|---|---|---|---|---|
| **TOTALS** | | **402.7** | | **$102,430** |

25  In addition to these attorneys' fees, Plaintiffs' counsel estimates that its litigation expenses will exceed $9,500.00 through the conclusion of this case.

26.  The requested amount for Plaintiffs' attorneys' fees and costs is far less than was actually incurred in this case by Plaintiffs' counsel (*i.e.*, a negative lodestar).  This further shows that the Agreements are fair and reasonable.

**D.     Conclusion**

27.  In the face of all the obstacles stated above by way of hotly contested issues, through motion practice, a contested §216(b) FLSA conditional certification motion, witness interviews, written discovery, depositions, and after lengthy settlement negotiations, in my professional and experienced opinion, the Agreements before the court are adequate, fair and reasonable, and meet the requirements of the FLSA.  The settlement achieves significant benefits for the Plaintiffs, represents finality to a long-standing wage and hour problem facing the Parties and avoids stretching adversary proceedings years into the future, let alone the uncertainties of additional motions, trials and appeals.  Ultimately the Agreements provide a meaningful monetary remedy when there was none before.

_____
Jesse L. Young

      

# *Expert* litigators.
# *Extraordinary* results.

**All too often, people and businesses are seriously harmed.** In an instant, a life can be destroyed, a job lost, a livelihood ruined, at the hands of another's careless or deliberate acts. As experienced and aggressive trial attorneys, we fix serious problems. We earn our clients' trust every day, case after complex case, and we're very good at what we do. We give individuals, families, and companies the ability to move forward.

## We make the law work **for you.**

*Sommers Schwartz is a contingency-based litigation firm recognized for who we are, what we do, and how we win - a reputation we've built over the past forty years.*

Our lawyers have been recognized nationally in personal injury and medical malpractice, commercial and business law, intellectual property, employment and wage and hour laws, antitrust, and consumer protection. We try serious cases on behalf of people and families, businesses, and municipal entities seeking to enforce their rights.

Selecting a law firm to fight for your cause can be one of the most important decisions you make. Law firms are more than just collections of lawyers who work together. When choosing your law firm, it's important to know who those people are and how well they collaborate with one another. Sommers Schwartz is a collection of the brightest and the best attorneys in their respective fields. And we work amazingly well together.

Because of our vast experience, our unmatched accomplishments, our synergy, size, and resources, we're known as one of the top law firms in the country. We are the law firm that people and businesses turn to when so much hangs in the balance. Make no mistake, we fight hard and we win.

You've got a critical choice to make, so choose wisely. Choose Sommers Schwartz

 

One Towne Square | 17th Floor | Southfield, MI 48076 | Toll-free: (800) 783-0989 | Phone: (248) 355-0300
www.sommerspc.com | www.sommerspc.com\blog



  

Class Action | Commercial Law & Intellectual Property | Employment



### *Jesse L. Young*

Shareholder
**Direct Dial**  (248) 746-4027
**Direct Fax**  (248) 936-2138
**Email**  jyoung@sommerspc.com

**Education**
Western Michigan University - Cooley Law School, Juris Doctor, Lansing, Michigan
   - Cum Laude
   - Member of Law Review
Western Michigan University, Bachelor of Arts, Kalamazoo, Michigan
Residential Builders License, State of Michigan No. 2101171400

**Bar Admissions**
Michigan
U.S. Supreme Court
U.S. Court of Appeals for the Sixth Circuit
U.S. District Court, Eastern District of Michigan
U.S. District Court, Western District of Michigan
Pro hac vice admissions in various state and federal district courts, including the State of Kentucky and U.S. District Courts in the Northern District of Alabama, Central District of California, Northern District of California, Northern District of Georgia, Northern District of Illinois, Western District of Kentcky, District of Maryland, Minnesota, Southern District of Mississippi, Eastern District of Missouri, New Jersey, Nevada, Eastern District of New York, Western District of North Carolina, Northern District of Ohio, Southern District of Ohio, Eastern District of Tennessee, Eastern District of Virginia, and Western District of Washington

**PROFILE**

**Areas of Practice**
Class Action
Employment

**Jesse Young** is a member of Sommers Schwartz's Complex Litigation Group, wherein he manages the day-to-day operations of the firm's Wage & Hour practice.

Jesse's practice primarily focuses on the litigation of collective and individual wage and hour claims arising under the Fair Labor Standards Act (FLSA) and similar state laws. Specifically, he represents individuals who have experienced wage theft by their employer, including but not limited to the non-payment of minimum wages and/or overtime, misclassification of employees, "off the clock" work, meal breaks, donning and doffing of work equipment, recordkeeping, and other issues peculiar to a wide variety of industries.

While Jesse's practice now focuses primarily on federal and state wage and hour claims, he also has employment law experience representing employees in need of help with severance negotiations, discrimination, and retaliation. Additionally, Jesse has experience representing persons and businesses experiencing contractual disputes and/or business torts.

Jesse has briefed and argued cases in Michigan state courts, the Michigan Court of Appeals, numerous U.S. District Courts, and the U.S. Court of Appeals for the Sixth Circuit.

## ACCOMPLISHMENTS

Mr. Young has been appointed to leadership positions in a variety of complex litigation matters:

- Padan v. West Corporation (Class Counsel)
- Kie v. iVox Solutions (Class Counsel)
- Alderoty v. Maxim Healthcare Services (Class Counsel)
- Atkinson v. TeleTech, LLC (Class Counsel)
- Tarrant v. Sutherland Global Services (Class Counsel)
- Wright v. Jacob Transportation Services, LLC et al. (Class Counsel)
- Wilson v. Maxim Healthcare Services (Class Counsel)
- Cardoza v. Bloomin' Brands Inc. et al. (Class Counsel)
- Matthews v. Convergys Corp. et al. (Class Counsel)
- Ingram v. Passmore Towing & Recovery (Class Counsel)
- Terry v. TMX Finance LLC et al. (Class Counsel)
- Lawrence vs. Maxim Healthcare Services, Inc. (Class Counsel)
- Stelmachers vs. Maxim Healthcare Services, Inc. (Class Counsel)
- Williams vs. Sykes Enterprises, Inc. (Class Counsel)
- Flores vs. Velocity Express, Inc. (Class Counsel)
- $7.5 million settlement in nationwide wage and hour collective action involving more than 12,000 call center employees who were not paid for their pre-shift computer login and boot-up time.
- $4.5 million settlement in nationwide wage and hour class action involving more than 20,000 at-home call center employees who were not paid for their pre-shift computer login and boot-up time and for time spent working "off-the-clock" while experiencing system downtime.
- $1.1 million settlement in nationwide wage and hour class action involving more than 1,000 at-home call center employees who were not paid for their pre-shift computer login and boot-up time and for time spent working "off-the-clock" while experiencing system downtime.
- $940,000 settlement wage and hour collective action settlement in a nationwide lawsuit against Sykes Enterprises, Inc. by approximately 4,000 call center employees who were not paid for their pre-shift computer login and boot-up time.
- $1.4 million wage and hour collective action settlement involving call center employees. Alleged violations included logging into and out of software programs which resulted in unpaid overtime compensation.
- $1.6 million settlement in a collective action brought in Georgia on behalf of hundreds of salaried recruiters who were not paid overtime after their employer misclassified them as exempt employees.
- $11.3 million collective action settlement on behalf of exotic dancers working at a Déjà Vu gentleman's club in an action brought in Michigan under the Fair Labor Standards Act (FLSA) for failure to pay minimum wage
- $3.6 million Equal Protection lawsuit:  Jesse Young assisted Andrew Kochanowski in obtaining a jury verdict against a city that discriminated against a property owner in violation of the 14th Amendment's Equal Protection clause
- $300,000 collective action settlement on behalf of Michigan property management employees who were unlawfully forced to take compensatory time off work in lieu of overtime pay, forced to work "off the clock" without pay, and docked pay for allegedly failing to punch in and out correctly.

**Honors/Awards**

- Michigan Lawyers Weekly "Up & Coming Lawyers" – 2014
- Super Lawyers Rising Stars (Michigan) – 2012 to present
- Habitat for Humanity Board of Directors (three-year term beginning 2012)
- Habitat for Humanity - 2011 Volunteer of the Year

**Seminars/Lectures**

- Faculty and Speaker, "Defending a Deposition," 2015 Deposition Skills Workshop, Institute of Continuing Legal Education,
- Plymouth, MI
- Moderator, 2014 FLSA Update, Institute of Continuing Legal Education, Ann Arbor, MI
- Speaker, 2014 Ohio Association for Justice Advanced Wage and Hour Seminar, Proving an "Off the Clock" Case Without Documentary Evidence, Park City, UT
- Speaker, 2013 American Association for Justice Annual Convention, The Fair Labor Standards Act: Making New Client Intake a Success, San Francisco, CA
- Speaker, 2013 Great Lakes Mass Torts Institute, An Overview of the Fair Labor Standards Act, Detroit, MI
- Speaker, 2012 MentorJet: Taking Networking to New Heights, joint Cooley Law School/Association of Women Judges program, Auburn Hills, MI

## MEMBERSHIPS

- American Bar Association
- American Association for Justice
- Oakland County Bar Association
- Federal Bar Association
- State Bar of Michigan
- Michigan Association for Justice




    



## *Jason J. Thompson*

Senior Shareholder
**Direct Dial**  (248) 415-3206
**Direct Fax**  (248) 436-8453
**Email**  jthompson@sommerspc.com

### Education

Michigan State University College of Law, Juris Doctor cum laude, 1992
   - Law Review - Note and Comment Editor
   - Clerk, Hon. John Bruff, 16th Judicial Circuit Court of Michigan
   - Clerk, Hon. Marvin Stempien, 3rd Judicial Circuit Court of Michigan
University of Southern California, Bachelor of Arts in Economics, 1989

### Bar Admissions

Michigan; U.S. District Court Eastern District of Michigan; U.S. District Court Western District of Michigan; U.S. District Court for the District of Maryland; U.S. Sixth Circuit Court of Appeals; U.S. Supreme Court;

## PROFILE

**Areas of Practice**

| | |
|---|---|
| Employment | Commercial Law & Intellectual Property |
| Class Action | Personal Injury |

**Jason Thompson** represents plaintiffs in class action and multidistrict litigation (MDL) involving consumer protection, employment rights, and mass tort cases in federal and state courts throughout the United States. His clients include individuals as well as municipalities, healthcare plans, and unions.

Over the past 23 years, Jason has been recognized for his excellence as a trial lawyer, including selection by his peers as a Super Lawyer™, board certification by the National Board of Trial Advocacy, and an AV Preeminent Lawyer rating from Martindale-Hubbell. Jason has served as class counsel and in MDL leadership positions in cases involving antitrust, overtime pay, insurance coverage, environmental pollution, and consumer protection. He has been asked to testify repeatedly before the Michigan Legislature regarding the state's pharmaceutical immunity law and amendments to qui tam provisions under Michigan's Medicaid fraud law.

In addition to his law practice, Jason writes and speaks on topics related to his practice, chairs Sommers Schwartz's Complex Litigation department, and sits on the firm's Board of Directors. He also teaches a course on class actions and MDL litigation as an Adjunct Professor at Michigan State University College of Law.

## ACCOMPLISHMENTS

Mr. Thompson has been appointed to leadership positions in a variety of complex litigation matters:

- APB Associates v. Bronco's Saloon, Inc. et al (Class Counsel)
- Compressor Engineering Corporation v. Manufacturers Financial Corporation, et al (Class Counsel)
- Machesney v. Lar-Bev of Howell, Inc. et al (Class Counsel)
- Alderoty v. Maxim Healthcare Services (Class Counsel)
- Atkinson v. TeleTech, LLC (Class Counsel)
- Avio, Inc. v. Alfoccino, Inc. et al. (Class Counsel)
- Wright v. Jacob Transportation Services, LLC et al. (Class Counsel)
- Klein v. Secura Insurance Co. (Class Counsel)
- Wilson v. Maxim Healthcare Services (Class Counsel)
- Cardoza v. Bloomin' Brands Inc. et al. (Class Counsel)
- Matthews v. Convergys Corp. et al. (Class Counsel)
- Ingram v. Passmore Towing & Recovery (Class Counsel)
- Terry v. TMX Finance LLC et al (Class Counsel)
- Ross v Jack Rabbit Services, LLC, et al (Class Counsel)
- Lawrence vs. Maxim Healthcare Services, Inc. (Class Counsel)
- Stelmachers vs. Maxim Healthcare Services, Inc. (Class Counsel)
- Williams vs. Sykes Enterprises, Inc. (Class Counsel)
- Flores vs. Velocity Express, Inc. (Lead Class Counsel)
- Jimenez et al vs. Allstate Insurance Company et al (Class Counsel)
- Automotive Wire Harness Systems Antitrust Litigation MDL No 2311 (Direct Purchaser PSC)
- Jackson's Five Star Catering, Inc. v John R. Beason d/b/a Tax Connection World & Tax Connection Worldwide LLC (Class Counsel)
- Exclusively Veterinary Cats Hospital, P.C. v Anesthetic Vaporizer Services, Inc. (Class Counsel)
- Northstar Education Finance, Inc. Contract Litigation MDL No. 1990 (Executive Committee)
- Stanley vs. United States Steel Corporation (Class Counsel)
- Amgen Off Label Marketing Litigation MDL No 1934 (Executive Committee)
- In re Neurontin Sales and Marketing MDL No. 1629 (Purchase Claims Committee)
- In re Vioxx Sales and Marketing MDL No. 1657 (Purchase Claims Committee)
- In re Bextra/Celebrex Sales and Marketing MDL No. 1699 (Purchase Claims Committee)
- In re Tricor (TPP Allocation Counsel)
- In re Zyprexa MDL No. 1596 (Purchase Claims Committee)
- Haase vs. Frank J. Bluestein, et al. (PSLRA Counsel)
- Regina vs. Comcast of Detroit, Inc. (Class Counsel)
- Snow v Atofina Chemical Inc. (Class Counsel)


- $3.5 million class action settlement on behalf of Teletech home-based customer service agents who claimed their employer unlawfully withheld compensation in violation of the Fair Labor Standards Act's wage and hour provisions
- $22.5 million recovered for class of insurance policyholders in 38 states whose covered property damage claims were previously underpaid
- $7.5 million settlement in nationwide wage and hour collective action involving more than 12,000 call center employees who were not paid for their pre-shift computer login and boot-up time.
- $4.5 million settlement in nationwide wage and hour class action involving more than 20,000 at-home call center employees who were not paid for their pre-shift computer login and boot-up time and for time spent working "off-the-clock" while experiencing system downtime.

- $1.1 million settlement in nationwide wage and hour class action involving more than 1,000 at-home call center employees who were not paid for their pre-shift computer login and boot-up time and for time spent working "off-the-clock" while experiencing system downtime.
- $940,000 settlement wage and hour collective action settlement in a nationwide lawsuit against Sykes Enterprises, Inc. by approximately 4,000 call center employees who were not paid for their pre-shift computer login and boot-up time
- $7.5 million settlement in nationwide wage and hour collective action involving more than 12,000 call center employees who were not paid for their pre-shift computer login and boot-up time.
- Wage and hour collective action settlement for $1.4 million involving call center employees. Alleged violations included logging into and out of software programs which resulted in unpaid overtime compensation.

**Honors/Awards**
- Michigan Lawyers Weekly – Top Settlement 2012 ($22.5 Million)
- SuperLawyers (Michigan) – 2006-2012 and 2014 to present
- Top 100 Trial Lawyers in Michigan, National Trial Lawyers Association
- Michigan Lawyers Weekly "Up & Coming Lawyers," 2001
- Board Certified Civil Trial Lawyer, National Board of Trial Advocacy
- Leading Lawyers - Class Action and Mass Tort Law
- AV Preeminent Lawyer (Martindale Hubbell) – Peer Review Rating of 5.0 out of 5.0

**Published Works**
- "Sixth Circuit Court of Appeals Rejects Old Approach to Michigan's Drug Immunity Defense," Michigan Bar Journal, January 2015
- "Supreme Court Confirms Importance of Class Actions," Michigan Association for Justice Journal, Fall 2013
- "Wage and Hour Litigation - Employee Status," Michigan Bar Journal, February 2011
- "Establishing Causation in an Ambient Air Quality Nuisance Action," American Association for Justice, Section on Toxic, Environmental & Pharmaceutical Torts, Fall 2008
- "Corporate Misconduct Helps Fuel Lawsuits," Crain's Detroit Business, August 30, 2005
- "Mass Tort Settlement Options in Class Actions and Multidistrict Litigation," Association of Trial Lawyers of America, Section on Toxic, Environmental & Pharmaceutical Torts, Spring 2003
- Environmental Pollution: Today's Lawsuits Against Polluters Are Inducing Claims for Emotional Distress Damages," Michigan Bar Journal, September 2002
- "'As Is' Clause Holds Water Under the Michigan Underground Leaking Storage Tank Act," Detroit College of Law Review, 1993
- "Room for Sobriety Checkpoints under the Fourth Amendment," Detroit College of Law Review (note), 1991

**Seminars/Lectures**
FACULTY POSITIONS
- Adjunct Professor, Complex Litigation, Michigan State University College of Law, 2013

SEMINARS/PRESENTATIONS

- Speaker, 2016 American Association for Justice Annual Convention, Employment Rights Section and Wage & Hour Litigation Group, "Mediating FLSA Actions"
- Speaker, 2015 American Association for Justice Annual Convention, Employment Rights Section and Wage & Hour Litigation Group, "The Current State of the De Minimis Doctrine and Recent Supreme Court Fair Labor Standards Act Decisions"
- Speaker, 2014 American Association for Justice Annual Convention, Employment Rights Section and Wage & Hour Litigation Group, "Rule 68 Offers of Judgment-Genesis and Beyond"
- Moderator, 2013 American Association for Justice Annual Convention, Employment Rights Section and Wage and Hour Litigation Group CLE Program
- Speaker, 2013 American Association for Justice, Continuing Legal Education Program, "The Latest Developments Affecting your Class Action Strategy Teleseminar"
- Sponsor, 2013 First Annual Great Lakes Mass Tort Seminar
- Moderator, 2012 American Association for Justice Annual Convention, Employment Rights Section and Wage and Hour Litigation Group CLE Program
- Moderator, 2011 American Association for Justice Annual Convention, Employment Rights Section and Wage and Hour Litigation Group CLE Program
- Speaker, 2011 Ohio Association for Justice Wage & Hour Seminar, "H2B Visa Workers and FLSA Violations"
- Moderator, 2011 American Association for Justice Annual Convention, New York, New York
- Speaker, 2010 Michigan Association for Justice New Lawyers "Discovery Workshop"
- Moderator, 2010 American Association for Justice Annual Convention, Wage & Hour Litigation Group Educational Seminar
- Speaker, 2009 American Association for Justice Annual Convention - "Wage and Hour Litigation: Employee Status"
- Panel Member, 2007 Michigan Trial Lawyers Association Deposition Workshop
- Speaker, 2005 American Association for Justice, Annual Convention - "Obtaining Recovery for Identity Theft Victims"
- Speaker, 2005 Florida Justice Association - "Bringing Your Closing Argument to Life"
- Speaker, 2005 Michigan Trial Lawyers Association Rapid Fire Seminar - "New Ways to Succeed"
- Speaker, 2003 Product Liability and Personal Injury Law Conference, Kitzbühel, Austria - "Class Action and Multidistrict Litigation Settlements"
- Judge, 3rd Annual National Trial Advocacy Competition, Michigan State University/Detroit College of Law, 2002
- Speaker, 2002 Michigan Trial Lawyers Association Seminar -"Mass Torts and Environmental Class Actions"
- Moderator, 2002 Michigan Trial Lawyers Association Rapid Fire Symposium - "Environmental Torts"
- Speaker, 1998 Michigan Trial Lawyers Association Rapid Fire Symposium - "EMS Cases"

MEMBERSHIPS

- State Bar of Michigan
- The National Trial Lawyers
- Million Dollar Advocates Forum
- American Association for Justice - Wage & Hour Litigation Group (Co-Chair), Class Action Litigation, Group, Section on Toxic Environmental and Pharmaceutical Torts, Employment Rights Section
- Michigan Association for Justice - Former Member, Executive Committee

    

